HAMILTON COUNTY v. C. GARRETT.

(Case No. 1596.)

1. SUIT AGAINST A COUNTY.— The principle announced in Watkins *v.* Walker County, 18 Tex., 592, affirming the right of the citizen to maintain an action against a county for injury done his land, reaffirmed.

2. STATUTE CONSTRUED.— The provisions contained in arts. 4372, 4373, Revised Statutes, are to be considered as limitations on the right of a commissioners' court to open a public road through inclosed land, rather than a rule fixing the measure of the owner's remedy for injury.  A disregard of the conditions imposed on a commissioners' court in opening a road cannot affect the right of the land-owner to maintain a suit for damages.

3. DISTINGUISHED.— This case distinguished from Keller *v.* Corpus Christi, 50 Tex., 614.

4. ACTION — CORPORATION.— If the statute creating a liability against a corporation points out the remedy, that remedy alone can be pursued.

5. DAMAGES — BILL OF RIGHTS.— The right of the citizen to compensation under the seventeenth section of the bill of rights exists, not only when his land is taken, but when it is in any way injuriously invaded, though not taken.  Citing authorities.

6. PUBLIC ROAD — DAMAGES.— The right of a citizen through whose uninclosed land, which he intended to fence for a pasture, a public road is established by the county commissioners' court, is not confined to a recovery of rent for the part appropriated.  The establishment of the road must be regarded as a permanent appropriation of the property, and his right to compensation is measured by the permanent injury inflicted.

7. STATUTE.— The defective condition of the statutes relating to the establishment of roads across uninclosed land commented on.

8. ESTABLISHING ROADS.— An order of the commissioners' court, establishing a first-class road, on the petition of freeholders asking for the establishment of a second-class road, is not void.  Their jurisdiction having attached by

reason of the application made, the commissioners' court could classify it in its discretion.

9. SAME — PRESCRIPTION.— Where the use of land for a highway is supposed to conform to the highway as laid out, but in fact varies from it, the public do not acquire a right to the strip actually used, in virtue of an adverse possession, because the possession does not correspond with the claim of right; nor in virtue of dedication, because there was never an intent by the owner of the land to dedicate the strip used.

APPEAL from Hamilton. Tried below before the Hon. T. L. Nugent.

This was a suit brought by C. Garrett, the appellee, against Hamilton county for the recovery of $1,000 damages, alleged to have resulted to him through the action of its county commissioners' court in establishing a public road of the first class over his land, against his protest.

The special subject of injury complained of was the alleged damage which the road occasioned to the plaintiff by reason of its being run diagonally through the land so as to destroy its value as an inclosed pasture, for which purpose he had intended to use it. Judgment for the plaintiff for $303.36.

*C. K. Bell*, for appellant, cited: Keller v. Corpus Christi, 50 Tex., 614; Sutherland on Damages, 369, note 3 *et seq.;* Dillon on Mun. Corp., secs. 444, 608–9; Bryan v. Page, 51 Tex., 532; 6 Wait's A. & D., 317, secs. 13, 14.

No briefs on file of opposing counsel.

WALKER, P. J. COM. APP.— The appellant's first ground of error is that the court erred in overruling the defendant's general demurrer and the special grounds of exception set forth in the demurrer.

The first of these grounds is, " Because Hamilton county, being an integral part of the state of Texas, and a public corporation, is not liable to an action unless given by statute."

The statute of 1846, defining the corporate rights and powers of counties, has remained in force ever since, and, with but little change, has been incorporated in the Revised Statutes. See R. S., art. 676 *et seq.*

The statute in question underwent consideration in the case of Watkins v. Walker County, 18 Tex., 592, where it was held that the action was well brought under that statute. The nature of the action was similar to this, and, so far as the right to sue the county is con-

cerned, the two cases are not distinguishable in principle, and it is deemed sufficient to refer to the opinion in that case, without entering upon a discussion of the question involved.

The second special exception is as follows: "Because if plaintiff has any ground of complaint against defendant, he should have pursued his statutory remedy for ascertaining his damages, and had five disinterested freeholders appointed by the commissioners' court of Hamilton county, who would assess the damages incidental to the opening of the said road; and in the event the said commissioners' court failed or refused to make such appointment, then plaintiff should have applied to this court for a writ of *mandamus* to compel such appointment. The plaintiff's right of action, if any he has, being a permissive one, and against a *quasi*-sovereignty, the statutory remedy alone can be pursued."

The remedy alluded to, if it be appropriate to designate it such, is contained in arts. 4372, 4373, Revised Statutes. The former provides that when the owner of any *inclosed* land protests in the mode designated against opening a public road through it, that the commissioners' court shall appoint five freeholders to assess the damages and report the result to said court. The latter article provides, in effect, that if that court, after receiving such report, shall determine to open the road, it shall proceed to order the payment of the damages assessed, if any, to be made to the owner of the land out of the county treasury.

These provisions are to be regarded rather as conditions and limitations imposed upon the county commissioners' court as to their right to open a public road through inclosed lands, than as prescribing a remedy to the owner for his redress for injury sustained through the acts of the county commissioners' court in opening such road.

The law imposes the duty on the proper county authorities to take the initiative steps above indicated before they shall open a road, and does not devolve the duty upon the owner to see to it that the commissioners' court shall do their duty in the premises, at the peril of being confined, in his remedy for damages, to the security which the general statute allows for his benefit. A disregard of such conditions by the commissioners' court would not, clearly, affect the right of the owner of the land to maintain his suit for damages. This principle is distinctly decided in I. & G. N. R'y Co. *v.* Benitos, 59 Tex., 327, 328; and see Tex. & St. Louis R. R. Co. *v.* Matthews, 60 Tex., 215.

But as the plaintiff's land through which the road was opened

was not alleged to be *inclosed* land, the statutory remedy for com-
pensation to the owner is not applicable in this case.

We do not regard the case of Keller *v.* Corpus Christi, 50 Tex.,
614, cited in the brief of appellant's counsel, applicable to this one,
for reasons sufficiently apparent from this opinion. We will notice,
however, that part of the special exception quoted from the opinion
in that case, containing at the conclusion the following proposition:
"Such suit being a permissive one, authorized by statute against a
*quasi*-sovereignty, the statutory remedy alone can be pursued."
Citing 2 Dill. on Mun. Corp., 759 (sec. 958 in the 3d ed.); Cooley's
Cons. Lim. (\*page 561 in 4th ed.), p. 561.

The rule above stated, as applied to public corporations—such
organized political divisions constituting parts of the governmental
machinery of the state, such as counties and the like,— is correctly
stated, and was unquestionably properly applied in that case. The
authorities cited for it do not, however, rest it upon the idea of ex-
emption against the right of complainants for injuries to sue such
public corporations on account of their supposed attributes of *quasi*-
sovereignty.

"Counties," says Dillon, section 25, 1st vol., Mun. Corp., "are
involuntary political or civil divisions of the state, created by gen-
eral laws to aid in the administration of government. Their pow-
ers are not uniform in all the states, but these generally relate to
the administration of justice, the support of the poor, the establish-
ment and repair of highways,— all of which are matters of *state*
as distinguished from municipal concern. They are purely auxil-
iaries of the state; and to the general statutes of the state they owe
their creation, and the statutes confer upon them all the powers
they possess, prescribe all the duties they owe, and impose all lia-
bilities to which they are subject. Considered with respect to the
limited number of their corporate powers, the bodies above named
rank low down in the scale or grade of corporate existence; and
hence have been frequently termed *quasi*-corporations."

The doctrine of the text quoted from Dillon on Mun. Corp. in Kel-
ler *v.* Corpus Christi, as we conceive, rests on the ground that no
other legal remedies exist against such public corporations than the
state, through the legislature, permits, and that such are exclusive
and must be followed. "If the statute creating the liability
against the corporation points out *the remedy*, that alone can be pur-
sued. Hence, if the statute provides for an assessment, a civil
action will not lie against the corporation. But if the statute gives
the right and prescribes no specific remedy, an action may be
brought." 2 Dillon on Mun. Corp., 3d ed., sec. 958.

The third ground of special exception is to the effect that the facts stated in plaintiff's petition do not show a permanent appropriation of the land, but manifest only an intention to temporarily use a portion thereof for public purposes; and that no facts are stated which show that any permanent depreciation of value of the plaintiff's land will result from establishing the road across the same; that the commissioners' court may, on proper application, change the location of said road, or entirely abolish and discontinue it; that the plaintiff's remedy, therefore, if any he has, would have been to sue for the rents and for the use of so much of his land as he was deprived of using by means of the road.

The plaintiff's petition shows that the tracts of land through which the road was opened were valuable for the purpose of an inclosed pasture, to which use he was about to appropriate it when the commissioners' court made its orders in respect to said road; that the road being run diagonally through the land rendered it useless as a pasture, and that it was not suitable nor valuable for any other purpose; that the water requisite for a pasture was left on one side of the tract, with none upon the other; that the land on the west side of the road, on which the water is situated, is such a small quantity, and in such an irregular shape, that the expense of inclosing it would amount to as much as it would be worth for a pasture, after it had been inclosed, and hence would be of no value to the plaintiff.

The seventeenth section of our bill of rights provides that "no person's property shall be taken, damaged or destroyed for, or applied to, public use, without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the state, such compensation shall be first made or secured by a deposit of money."

The exercise of this right of eminent domain in express terms contemplates any damage which may result to the owner of the property from the taking of it for the public use. The facts alleged show a damage to the owner. The right to such compensation exists "not only when land is taken, but when it is in any manner injuriously invaded though not taken" 3 Suth. on Dam., 431; citing Pumpelly v. Green Bay Co., 13 Wall., 166; Eaton v. B. C. &. M. R. R. Co., 51 N. H., 504; Grand Rapids B. Co. v. Jarvis, 30 Mich., 308; Stetson v. Chicago, etc., R. R. Co., 75 Ill., 74. The appropriation made of the land by the county commissioners' court was of a permanent character. Article 4360, Revised Statutes, authorizes that court to lay out and open public roads when necessary, and to discontinue them or any of them "whenever it shall be

deemed expedient." Such roads are therefore dedicated through
the state's agencies to the use of the public permanently, unless dis-
continued at the will of the commissioners' court. This must be
deemed, as to the owner of the land, a permanent appropriation of
his property. He has lost thereby right and dominion over it until
the adverse right shall be voluntarily abandoned. The time when
it may, if ever, be relinquished to him, cannot be conjectured, and
no other basis is afforded on which to determine the duration or
tenure of the title thus acquired against him than that of a perma-
nent loss of the property or right thus taken; and he has a right
thus to treat it, and to base his right to compensation on the sup-
posed permanency of the injury which is occasioned by the taking
of the property for such a use under such an authority as that
which article 4360, Revised Statutes, confers.

If the plaintiff, relying on his right to the protection of his pos-
session of his land as against the trespasses of the county authorities
in opening the road across his land, until due compensation to him
had been made or properly secured under the constitutional provision
above quoted, had seen proper not to have yielded to the claim of
the commissioners' court to open said road on his land, he could have
confined his cause of action to his claim for damages for the tres-
passes that might be successively committed under the authority of
that court, and the measure of damages would not have relation to
a permanent appropriation of the land by the county of Hamilton,
nor would the damage set forth in the petition be deemed a perma-
nent injury; and the principle or rule of law would have applied, to
which counsel in their brief adduced the authority of vol. 3, Suther-
land on Damages, 369, note 3 *et seq.;* secs. 608, 609 (3d ed.), 2 Dil-
lon, Mun. Corp.

But the owner of the land may, notwithstanding his protest, *in
limine,* after the road has been opened against it, withdraw further
opposition thereto, and acquiesce in the results of that which his
objections were unavailing to prevent. In so doing, he would not
have waived his right to be compensated in that permanent damage
which he had contemplated would ensue when he had made his pro-
test, the anticipation of which had, probably, induced him to make
it. The plaintiff saw proper thus to withdraw further opposition,
and to claim such damages, and he was entitled to base his right to
recover on the supposed permanency of the appropriation of his
land by the county commissioners' court, and the consequent per-
manent injury or damage to him resulting therefrom.

In this connection it may not be amiss to express a regret that

the state of legislation on the subject of providing a convenient method for prompt adjustment of compensation to owners through whose lands public roads may be laid off and opened does not furnish it at all to owners of *uninclosed* lands. This *casus omissus* was doubtless the result of accidental inadvertence in re-enacting, transcribing, or else in printing the statutes on this subject. The Revised Statutes provide for the assessment of compensation only to the owners of farms, lots or inclosures. See arts. 4370, 4371, 4372. The act of 1858, which remained in force until re-enacted in 1876 (from which latter the Revised Statutes copied and adopted), contained the same provisions identically as those of 1876 and those of the Revised Statutes, with the exception that the section of that act (the eighth section of the act of 1858) which corresponds with art. 4372, Revised Statutes, and which in all other respects is the same, embraces *uninclosed* land and lands of no other description. The same discrepancy exists in regard to the corresponding section (11) in the acts of 1876, p. 64. The error (if such it be) originated in the last cited act. As the law now stands there is no mode pointed out by statute for the assessment of compensation to owners of uninclosed lands. The context of the statute indicates with reasonable certainty that art. 4372 was meant, when enacted in 1876, to embrace uninclosed lands. It provides for similar proceedings as those which art. 4371 had already required in cases of *inclosed* land, and it therefore seems to be but little more than an almost meaningless repetition of the preceding articles. Attention is thus called to the subject, with the view of suggesting the proper correction by the legislature, if such should be deemed essential.

The second and third grounds assigned as error are not well taken. It was not error to allow the plaintiff to show that the commissioners' court ordered the opening of a first-class road, notwithstanding the supposed irregularity of doing so on a petition of freeholders asking for a second-class road, and that the order appointing reviewers was for a second-class road. The court had jurisdiction of the subject matter, and the order it made, if irregular, was not null and void. It had the right to establish a road of either class, and the modes prescribed by the statute for soliciting and obtaining orders from the court for the one or the other, or for reviewing such, are not to be construed as provisions limiting the jurisdiction of that court in determining whether the contemplated road shall be of the one class or the other. Art. 4360, Revised Statutes, confers ample authority, independent of the application of

freeholders for a new road, to order the laying out and opening of public roads when necessary, and under art. 4361, Revised Statutes, such roads shall be classified by the commissioners' court into first, second and third class roads. The statute does not attempt to regulate and prescribe the mode of proceeding, or to limit the jurisdiction of the court, on applications for a new road, as provided for in art. 4366, Revised Statutes, beyond the prescription that the petition for the desired road shall be signed by at least eight freeholders of the precinct or precincts in which such road is desired to be made, specifying the beginning and termination of such road proposed to be opened.

The defendant pleaded among other defenses that the public had acquired a prescriptive right to a public road over the plaintiff's land by their continuous and uninterrupted use of the land over which the road runs, that has been now established by the commissioners' court for more than ten years next preceding the commencement of this suit. The evidence showed, and the jury found on special issues, the existence of and use of such a road over the defendant's land, and which ran in its general course parallel with the road which is the subject of this controversy, but the roads did not run over the same ground. The jury specially found, too, that the old road had been abandoned within the last five or six years, and another one had been made or used previous to the last one laid off by the commissioners' court.

On this finding the court did not err in determining this issue in favor of the plaintiff. The proposition of appellant's counsel, in effect, is that the user by the public of the roads across or over the land gave a prescriptive right if it had been continued for the period of ten years.

The prescriptive right cannot be extended beyond the domain and limits of the road itself which is the subject for the application of the rule. The actual use and claim of right to the use of the road by the public on the one hand, and the acquiescence of the owner of the land on the other, to such use and claim, are the elements which originate and maintain the rule of prescription; but beyond the limits of the road itself, the public have neither made use nor claim, nor can it be implied that the owner has or would have acquiesced in the one or acknowledged the validity of the other.

It was held in State v. Welpton, 34 Iowa, 144, that where the use of land for a highway is supposed to conform to the highway as laid out, but in fact varies from it, the public do not acquire a right to the strip actually used in virtue of an adverse possession, be-

cause the possession does not correspond with the claim of right, nor in virtue of dedication, because there was never an intent by the owner of the land to dedicate the strip used.　6 Wait's Act. & Def., 319.　See, also, Fall River Works v. Fall River, 110 Mass., 428; Wood v. Hurd, 34 N. J. (Law), 87.

The remaining questions presented under the assignment of errors do not require discussion; those points are not well taken.　We find no error in the record for which the judgment ought to be reversed, and we report for its affirmance.

AFFIRMED.