# MARCH, 1926.

CALIFORNIA SPECIAL ROAD DISTRICT, APPELLANT, v. LOUIS BUEKER, RESPONDENT.*

Kansas City Court of Appeals. March 1, 1926.

436

*Corpus Juris-Cyc References: Dedication, 18CJ, p. 107, n. 81; Highways, 29CJ, p. 383, n. 99; p. 620, n. 39; p. 638, n. 85, 96.

*S. C. Gill* and *Embry & Embry* for appellant.

*W. C. Irwin, Roy Kay* and *J. B. Gallagher* for respondent.

ARNOLD, J.—This controversy arose over the alleged obstruction by defendant of a public highway.

Plaintiff is a corporation organized as a special road district under the provisions of Article 6, chapter 102, Revised Statutes 1909, and embraces and includes the public road leading from California which is the county seat of Moniteau county to the village of High Point in the southern part of said county and known as the California-High Point road. Defendant is a farmer residing upon land owned by him adjoining said highway on the west for a distance of one-half mile.

The petition in case No. 15171 was filed March 29, 1920, and alleged that on and prior to June 13, 1919, defendant wilfully and knowingly obstructed said road by fencing upon the right of way thereof; that upon June 13, 1919, the road commissioners of said special road district, through its proper officers, notified defendant verbally and in writing to remove said obstruction; that same has not been removed and ever since has been wilfully and knowingly maintained by defendant. The prayer is for judgment against the defendant for the penalty of $5 per day for each and every day said ob-

struction has been and shall be maintained after ten days from date of notice, as provided by section 10720, Revised Statutes 1919.

The cause was tried to a jury, resulting in a verdict for defendant. An appeal was taken to this court and upon the plea that a constitutional question was involved, the cause was transferred to the Supreme Court; but that court found there was no constitutional question presented and sent it back to this court where the judgment was reversed and the cause remanded for a new trial for errors in instructions. [Calif. Rd. District v. Bueker, 256 S. W. 98.]

Some two or three years after the filing of the first petition, a second petition was filed, wherein plaintiff sought to recover on the grounds alleged in the first petition, to-wit, for accrued penalty as a first count, and for a second count, injunctive relief was sought. The answer to the second petition was a general denial.

When the first cause again came on for trial, it was agreed that both cases should be tried together before the court sitting as a jury. The former case is designated on our docket as No. 15171 and the latter as 15172. As the two cases involve the same parties and issues and as they were tried together, the evidence being the same, and have been briefed together, they will be considered and determined as one case on this appeal.

Before any testimony was introduced at the trial, defendant offered objection to the introduction of any evidence wherein constitutional questions would be presented to the court. The objection was overruled. The trial court sitting as a jury found the issues for defendant and accordingly entered identical judgments in the two cases.

It appears of record that plaintiff was organized and incorporated under the provisions of Session Acts of 1895, p. 263 (now Art. 7, ch. 98, R. S. 119), as a special road district, in the year 1897; that it has ever since maintained its corporate existence and by its duly elected commissioners has exercised control over all public highways within its district outside the corporate limits of the City of California, being composed of a territory of six square miles. Within the boundaries of this district there is located the public road in question which runs in a general southerly direction and over which there has been, and is, much travel. Adjacent to and west of said highway defendant owns a farm described as the Northwest Quarter, Township 44, Range 15, Moniteau county, Missouri, extending one-half mile along said highway.

It is admitted that some years ago defendant had straightened his fence for a short distance near the northeast corner of his land, along the right of way, and that at the northeast corner of his farm the fence was standing some three or four feet further east than formerly. The residence of defendant stands about 200 yards to one-fourth of a mile south of the north line of his land, on the west side of and near said highway. The northeast corner of his farm is in a little valley

formed by two hills one of which slopes from the north and the other from the south. The surface water from these hills flows towards the valley and crosses the highway toward the east through a culvert a few feet north of the north line of defendant's land. This culvert has been maintained in said location for more than thirty years.

The evidence shows that the California-High Point highway has been in existence for a period of 65 to 70 years, practically in its present location, but varying somewhat and running in slightly different places; that at one time it ran on the east side of its present location and at the point in question was wholly on the east side thereof but that years afterward, the culvert above referred to was placed across the highway near the northeast corner and a few feet north of Bucker's land and, as stated, has been maintained there for over thirty years. Originally the culvert was narrow, but a few years ago, it was spliced at each end.

In going from the south towards the corner in controversy the road goes down a hill, or in other words, the land slopes to the north, while defendant's land above the fence slopes to the east toward the road. It appears that a number of years ago there was a community road from the west coming through defendant's field and intersecting the High Point road at the northeast corner thereof; and this community road started a wash down the hill on the west side of the roadway of considerable width, as shown by the testimony, and defendant, when he first built his fence along there, placed it in the same position where it now stands, to-wit, northward from his house, in front of which there is no fence—until the ditch was reached on the northeast corner of his land, at which point the fence was set out into the field to the west, around the ditch and west of defendant's east line at that point.

From the record we learn that in 1869 there was presented to the county court of Moniteau county a petition for the establishment of the California-High Point Road. This is the first record evidence relative to this road, and is as follows:

"Now comes Thomas J. Hart and presents a petition praying that a road leading from California to High Point is surveyed and permanently located; and the court doth order that the road commission view, survey and work out said route and make report thereof, at the next regular term of this court issued."

There was no other order of record found relative to the establishment of the road.

In 1898, the California Road District was established and soon thereafter, the road along the point in controversy was macadamized. The testimony also tends to show that the road at the point in controversy was graded, macadamized and built over the culvert heretofore mentioned; and that the main travelled part of the road has been, and now is, just where it was established at that time. Some

years afterward, on verbal request of the commissioners of the California Special Road District, the presiding judge of the county court of Moniteau county ordered the county surveyor to survey the road with a view to rebuilding, or relocating the same. The county surveyor, J. H. Elliott, testified that pursuant to the verbal orders of the said presiding judge he had made the survey as directed and reported same in writing filed with the county clerk. This witness testified that about the year 1918 or 1919, he surveyed the line for half a section of land and placed stakes at a distance of twenty feet east and west of the quarter section line, which he found to be approximately in the center of the roadbed as it then appeared; that witness frequently was directed by verbal orders to make surveys, but as a general rule, the orders were in writing; that the county court paid him and his assistants for the survey in question and that the stakes placed by him twenty feet west of the center of the roadbed, or quarter section line, were intended to establish the west line of the right of way.

The evidence shows that the plaintiff road district, upon this establishment of the line, proceeded to grade said road making a new ditch on each side and that this ditch on the west side was placed about fifteen inches east of said stakes. When this ditch was completed it led the water all the way from defendant's house north along the west side of the road to the culvert heretofore mentioned. This ditch was further to the east than the old ditch by some two to three feet and was cut straight through on the line made by the surveyor.

Sometime after the new ditch was established and the surface of the road graveled, defendant straightened his fence, running it down, in places into the old ditch although down near the corner as shown by defendant's evidence, the old ditch was still on the outside of the fence. At the point in controversy defendant placed his fence within about a foot of the stakes placed by the surveyor and on the west side thereof, thus placing the fence about three feet west of the new ditch.

It is further shown by the evidence that the northeast corner post of defendant's land stands about three or four feet east of the fence of the owner of the land joining him on the north. The testimony shows, however, that the fence to the north bends to the west for some yards north of the said corner and therefore is not conclusive as to the exact location of the property line.

It is plaintiff's contention that the point where defendant's fence now is, at the northeast corner of his land and for a few yards south thereof, is on the right of way of plaintiff's road as established by user, and there is some testimony to support this position. On the other hand, defendant maintains that the evidence fails to show sufficient user to establish a roadway at the point where defendant's fence now stands and that if the line was so established by user, the fact

440

that it was abandoned by plaintiff road district when the new line marked by the county surveyor at plaintiff's instance was accepted. had the effect of changing the location of the road. It is clear therefore that the determination of this appeal lies in the proper solution of the controverted question of whether defendant's fence is on the right of way of plaintiff's road as established by user. If it is not, then both of plaintiff's cases fail. The view of the trial court was that plaintiff failed to support the allegations of the petition and therefore the finding was for defendant. If plaintiff's fence is on the right of way as established by user, then it follows that it constitutes an obstruction therein.

In its assignments of error, plaintiff first contends that the court erred in admitting evidence of the survey and location of the road by the county surveyor, and by direction of the presiding judge of the county court. The trial court found that the county court was within its proper jurisdiction in directing the county surveyor to survey and locate the right of way. It was held by this court in State v. Thompson, 91 Mo. App. 329, that where a road has been established by condemnation or by dedication, the public has the right to the use, of the entire width of the road so established or dedicated. But it was also held in that case and in Calif. Rd. Dist. v. Bueker, 256 S. W. 98, that where the road has been established by prescription and use, a different rule applies, to-wit, that the public is only entitled to the traveled public road and the width used.

It is the general rule that where a road has been established along a controverted line, but substantially on a section line, it follows and is located on that line whenever the true line is finally determined. [Dowdle v. Cornue et al., 9 S. D. 26, 68 N. W. 194.] It therefore follows that where land for highway purposes is laid but in fact user varies from it, the public does not acquire a right to the strip actually used in virtue of adverse possession because the possession does not correspond with the claim of right, nor in virtue of dedication, because there never was an intent of the owner of the land to dedicate the strip used. [Hamilton v. Garrett, 62 Tex. 602.]

In the case at bar the testimony shows that the road in question, prior to the survey mentioned above, materially varied. This situation seems to have been so forcibly impressed upon the minds of plaintiff's commissioners that they asked the presiding judge of the county court to locate the said road definitely. The testimony further shows that plaintiff accepted this new survey, acted upon it, and established the right of way pursuant thereto. It appears this action followed years of indecision as to the exact lines marking the lateral limits of the road.

But plaintiff further contends that the location of the road, having been established by user, there could be no modification thereof by

abandonment. We think this position tenable and that the court erred in admitting evidence relative to the new survey, for, as stated above, the right of way having once been established by user, the rights of the public therein may not be abandoned, even by acts of the county court. [Barrett v. Coal Co., 70 Kans. 649; Tarver v. Depten, 132 Ga. 798.] Moreover, in this case the testimony tends to show that the resurvey was ordered by the presiding judge of the county court alone. It has been held that counties are not estopped by the illegal and void acts of their limited statutory agents. [Sturgeon v. Hampton, 88 Mo. 203; Heidelberg v. St. Francois Co., 100 Mo. 69; State v. Farrelly, 36 Mo. App. 282.] From these rulings we must conclude that the court erred in admitting evidence of the new survey.

We now pass to a discussion of plaintiff's claim that the strip of ground now occupied by defendant's fence belongs to the right of way by right of user. There was testimony in plaintiff's behalf tending to show that prior to the establishment of the right of way by survey, travelers along the highway, in order to avoid a mud hole at the corner of defendant's land and also vehicles in passing each other, at times, had driven to the west side of the regularly travelled road, and that earth at that point had been used, at times, in repairing the road. This testimony, we think, tends to prove establishment by user for the prescriptive period at the place where defendant had put the corner of his fence. [State v. Proctor, 90 Mo. 334; State v. Davis, 27 Mo. App. 624; State v. Bradley, 31 Mo. App. 308.]

Having acquired the road by user, at the point in controversy, the public has the right to continue its use unobstructed, and such right does not depend upon the fact of whether or not it could actually be used by vehicles and other traffic, since the public has the right to that part of the road for purposes incident to its maintainance, such as the use of the timber, soil and other materials found within the limits established by user. [Cook v. Hecht, 64 Mo. App. 273.] We do not wish to be understood as holding that the right by user may not be abandoned, but eliminating the testimony relative to the resurvey, which we have held inadmissible (Road Dist. v. Bueker, supra), there is left in the record no evidence to show abandonment. [State v. Tranue, 131 Mo. App. 323.]

There remains but one other point for determination on this appeal. Plaintiff charges that instruction "D" given on behalf of plaintiff as modified by the court of its own motion, in adding the words "unless the section line is actually the center of the road," is erroneous. The instruction is as follows:

"The court declares the law to be that even though the court may find from the evidence that a road overseer many years ago in working said public road maintained that the center of said public road at or near the point alleged to have been obstructed or at any other point in

said public road should be the section line near the east side of defendant's land, or that he actually directed work to be on said section line, constitutes no defense in this case, unless the section line is actually the center of the road.''

Under our ruling above upon the admission of evidence as to re-survey, the purpose of the testimony being to show abandonment, this instruction constitutes reversible error. For reasons above stated, the judgment is reversed and the cause remanded. *Bland, J.,* concurs; *Trimble, P. J.,* absent.

