## G. C. WRIGHT ET AL. v. N. J. JONES.

Delivered October 31, 1896.

**1. County Boundary Line—Power of Commissioners Court—Legislative Ratification.**

Since the Legislature could empower the Commissioners Courts to adjust and establish disputed county boundary lines, it could by subsequent curative act ratify their action in such a matter done without previous authority.

**2. Damages—Liability of Officer—Judicial Act.**

The members of the County Commissioners Court are not individually liable in a civil action to one whose property has been wrongfully taken by the tax collector in pursuance of an order of such court to collect a tax levied by them in a district which, upon a misconstruction of the law, they had erroneously determined to be within their jurisdiction.

**3. Same—Exemplary Damages.**

Neither the officer collecting nor the Commissioners Court levying a tax on the citizens of a district which the court has erroneously, but without malice or wantonness, determined lies within its jurisdiction, can be held liable for exemplary damages, although property has been wrongfully and illegally seized in consequence of the order for collection of the taxes.

**4. Same—Officer as Trespasser—Actual Damages.**

Where a tax collector executes void process in another county, he is liable in actual damages as a trespasser.

APPEAL from Jack. Tried below before Hon. J. W. PATTERSON.

*Stine, Chesnutt & Hurt* and *Templeton & Patton,* for appellants.—1. The Commissioners Court of Clay County, as it was constituted on April 29, 1876, when it made the order appointing Samuel Green to survey the south boundary line of Clay County, and on July 31, 1876, when it made the order approving said report of said survey, was not a legally constituted and organized court, and it had no jurisdiction or authority to make the orders complained of, and said orders were not binding on Clay County, and did not estop it from asserting its jurisdiction over the disputed territory. Pasch. Dig., arts. 1057-1062; Sayles' Const., p. 546.

2. The defendants F. J. Barrett, E. W. Coleman, J. H. Bridges, J. P. Metzger and A. J. Farmer acted solely in their official capacity as members of the Commissioners Court of Clay County, and under the evidence in this case, they were not liable individually for their actions as members of said court, and the court erred in not so instructing the jury. Cooley on Torts, 446-450, 472-480; Bishop, Non Contract Law, secs. 779-783; Anderson v. Roberts, 35 S. W. Rep., 416; Rains v. Simpson, 50 Texas, 495; Throop on Pub. Officers, secs. 707-709, 713, 717, 718, 719-721.

3. C. R. Sanders was acting only as a deputy under the sheriff and tax collector, and was not liable for his actions as such deputy, but appellee's remedy was against the sheriff and tax collector. Murfree on Sheriffs, sec. 927; Throop on Pub. Officers, sec. 590.

4. The evidence was insufficient to raise the issue of exemplary damages and is insufficient to sustain the verdict and judgment for such damages, and the court should have so instructed the jury, and should have granted appellants' motion for a new trial based on the insufficiency of the evidence to sustain the judgment for such damages. Bradshaw v. Buchanan, 50 Texas, 494; Dillon v. Rogers, 36 Texas, 152; 4 Willson's C. Cas., sec. 253, and authorities there cited.

5. The Commissioners Court of Clay County in 1891 had jurisdiction and authority to ascertain and determine for itself whether or not the south boundary line of said county was sufficiently definite and well defined, and said court having determined that the line was not thus definite and defined, it had the power to appoint R. J. Brown to survey, mark and define the line in the manner prescribed by law, and to approve his report of said survey, and upon the approval of said report the line as surveyed by Brown became the true south boundary line of said county, and the judgment of said court so declaring same to be the line is not subject to collateral attack in this proceeding. Sayles' Civ. Stats., arts. 686-691a; Koehler v. Earl, 77 Texas, 190; Martin v. Robinson, 67 Texas, 374.

*Thos. D. Sporer* and *Nicholson & Nicholson*, for appellees.—1. The control, management and jurisdiction of all county business, having been invested in the Commissioners Courts by the Constitution of 1876, they had full power to settle and establish divisional county boundary lines. Const., 1876, art. 5, sec. 18.

2. It has been the settled practice of the people and the courts of this State to attribute and refer the settlement of county lines to the Commissioners Courts. The public history of the counties of this State will confirm us in this assertion. The archives and records of the General Land Office, as well as the records of the various Commissioners Courts, will also corroborate us; and the opinions of our Supreme Court and other appellate courts recognize and affirm this jurisdiction; and it was not until quite recently that it was denied. Kaufman County v. McGaughey, 11 Texas Civ. App., 551. It is now stare decisis. Rockwall v. Kaufman County, 69 Texas, 172; Jones v. Powers, 65 Texas, 207.

3. The divisional line between Clay and Jack Counties had been regularly established, and hence the property of the citizens south of said line was not subject to taxation in Clay County; and any attempt by the members of the Commissioners Court to ignore their own minutes, and to have said property assessed for taxes and seized and sold for the payment of the same, was a trespass for which they, as members of the court, were liable to answer in damages; and they could not claim immunity on the ground of being judicial officers and merely exercising their discretion as such officers. 12 Am. & Eng. Ency. of Law, 33, note 2, and 34, note 1; Cooley on Torts, 414, 416, 417, note, 419, 420, note 1; 2 Sedgwick on Dam., sec. 562.

4.　When a combination of persons conspire together to do an act, illegal and oppressive in its nature, and in the performance of this unlawful act they conduct themselves in a harsh and severe manner, and show an utter disregard of the rights of others, the jury should allow liberal exemplary damages; and the court should so instruct them; and especially should this be done, when the persons forming the combination are officers, and using their official positions to aid them in the accomplishment of their evil designs.　Cook v. De la Garza, 9 Texas, 361; Kolb v. Bankhead, 18 Texas, 228; Haggland v. Cothern, 25 Texas, 345; Gordon v. Jones, 27 Texas, 620; Clark v. Loftus, 80 Texas, 146; 2 Sedgwick on Dam., 564.

TARLTON, CHIEF JUSTICE.—The appellee, as plaintiff, brought this suit to recover actual and exemplary damages on account of the alleged illegal seizure and conversion of his horse by the appellants, who were defendants.　The appellants are G. C. Wright, the sheriff and tax collector of Clay County, C. R. Sanders, his deputy, and F. J. Barrett, J. H. Bridges, E. W. Coleman, J. P. Metzger and A. J. Farmer, members of the County Commissioners Court of Clay County, Barrett being the county judge.

It is charged in the petition that the defendant Wright and his deputy levied upon the plaintiff's horse in Jack County, by virtue of the tax rolls of Clay County, for taxes claimed to be due by the plaintiff to Clay County; and that the remaining defendants, the county judge and commissioners of Clay County, ordered and advised the illegal levy and seizure, and that the act was done wrongfully, maliciously, and for the purpose of vexing and harassing the plaintiff.

The defendants, after pleading the general denial, aver that they were at the time of the levy officers of Clay County; that as such they were charged with the duty of collecting taxes due Clay County; that the plaintiff Jones was indebted to that county for certain taxes; and that the levy was made in Clay County by a deputy sheriff and by legal authority, to enforce the collection of the taxes thus due.　The defendants Barrett, Bridges, Coleman, Metzger and Farmer aver that they acted as members of the Commissioners Court of Clay County; that their conduct was official; and they plead their immunity from an action for damages under such a state of facts.

Our conclusions of fact are as follows:

In 1893 the plaintiff Jones lived near the boundary line separating Clay County on the north from Jack County on the south.　The territory in which he lived was a strip which formed the subject of dispute between the two counties, it being claimed by each that the strip was a part of its territory.　It was in fact a portion of Jack County.

For that year the County Commissioners Court of Clay County levied the taxes for county purposes in the usual manner, claiming the property situated in this strip to be subject to those taxes.　In making this levy the members of the court honestly believed that the strip in dis-

pute belonged to Clay County, and their action in making the levy and ordering the collection of the taxes within the strip in question was prompted by their sense of official duty. They were not influenced by any malicious motive towards the appellee or any resident within that territory.

On February 12, 1894, the Commissioners Court of Clay County, composed of the persons already named, ordered the tax collector, G. C. Wright, to proceed with the collection of the taxes on the disputed strip in question, with a further order that Clay County would indemnify him in any damages recovered against him on account of his official action in obeying the order. On April 12, 1894, the sheriff and tax collector, G. C. Wright, through his deputy, C. R. Sanders, made demand of the appellee Jones for the taxes claimed to be due under the preceding assessment and levy by Clay County, and on the refusal of the appellee to pay the taxes, the horse in question was seized (not, however, in any sense maliciously), and after the usual advertisement was sold, and its proceeds applied to the payment of the taxes claimed to be due to Clay County. The horse was of the value of $75.

The jury returned a verdict against all of the defendants for the principal sum of $75, as actual damages, and the further sum of $325, as exemplary damages. From the judgment entered upon this verdict, the defendants appeal.

*Opinion.*—Thirty-three assignments of error are presented in appellants' brief. We think, however, that a proper disposition of this appeal may be made upon a decision of four questions involved.

1. We have found as a fact that the strip of territory in dispute between the two counties, Clay and Jack, is a part of the latter county. This conclusion involves in itself a question of law arising upon the validity of previous orders of the Commissioners Courts of the two counties, which we proceed to consider.

On April 29, 1876, at a called term of the Commissioners Court of Clay County, the county judge and two of the commisioners being present, that court entered an order appointing Sam Green the surveyor of Clay County to run the dividing line between Clay and Jack counties. The order directed that the line should commence at the southeast corner of Clay County and the northeast corner of Jack County; that the surveying should begin on the first Monday in June, 1876; and that the County Commissioners Court of Jack County should be notified to appoint a competent person to assist in the running of the line.

On July 31, 1876, the county judge and two of the commissioners being present, a second order was entered by the court, reciting the appointment of Green at the April term, 1876, and that he had made a report, according to field notes then set out, that the line had been run on the 6th, 7th, 8th, 9th, 10th, and 11th days of June, 1876, and order-

ing that the report be accepted, and that the field notes be adopted as the south boundary line of Clay County.

On May 30, 1876, the Commissioners Court of Jack County, the county judge and three of the commissioners being present, entered an order appointing Wesley Calloway surveyor of Jack County, and ordering him to meet the surveyor of Clay County on the first Monday in June for the purpose of running and establishing the county line of Clay County.

November 2, 1876, the Commissioners Court of Jack County, the county judge and two commissioners being present, entered an order reciting that Calloway had filed his report of the running of the north and west boundary lines of Jack County, and directing that the clerk record the report on the record of the minutes of the court. The report, consisting of the field notes of the survey, signed by the surveyors, was entered of record.

The question presented is, whether the action of the Commissioners Courts of Clay and Jack Counties in ordering and approving the reports above mentioned was within the jurisdiction of those courts, it being contended that the Commissioners Court had no jurisdiction or authority to make the orders referred to.

In disposing of this question we deem it useful, to some extent at least, to review the legislation upon the subject.

By Act of May 12, 1846, Paschal's Digest, art. 1057 et seq., jurisdiction was conferred upon the County Court as then organized under the Constitution of 1845 to appoint a competent surveyor for the purpose of marking the boundaries of the county, when they were not sufficiently ascertained. This law was effective under the Constitution of 1869, sec. 20, art. 5, and was also in force on the adoption of the present State Constitution, which took effect April 18, 1876.

By the latter instrument, article 5, section 18, it is provided that, "The County Commissioners so chosen (according to preceding provisions), with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this State, or as may be hereafter prescribed."

By article 16, section 48, of the same instrument, it is provided that, "All laws and parts of laws now in force in the State of Texas which are not repugnant to the Constitution of the United States or to this Constitution, shall continue and remain in force as the laws of this State until they expire by their own limitation or shall be amended or repealed by the Legislature."

On July 22, 1876, the Legislature adopted an act, taking effect from its passage, organizing Commissioners Courts and defining their jurisdiction and duties. By section 15 of this act it is provided that the "Commissioners Courts shall have and exercise all the powers conferred by law on County Courts as heretofore existing, which are not herein

enumerated and which are not in conflict with the provisions of this act."

On August 19, 1876, the Legislature adopted "An Act validating the acts of the Commissioners Courts throughout the State of Texas had from the 18th day of April, 1876, to the 15th day of August, 1876." By that enactment the acts of the Commissioners Courts had in the different counties during the period above stated in the interests of their different counties were "declared to be as valid and binding as if under the law defining duties and powers of Commissioners Courts passed on the 22d of July, 1876."

As we interpret this curative statute, it means that if the Commissioners Court should have entered any order on any day within the period named which would have been valid had the act of July 22, 1876, been then in force, such order should be held in all respects valid and binding. The statement of this interpretation is a solution of the question involved against the contention of the appellants, unless it can be said that this curative act is unconstitutional, as being reprehensibly retrospective in its operation. Such we deem it not to be, within the sense of our constitution.

In Morris v. State, 62 Texas, 740, it is held, with a citation of numerous authorities, that, "What the Legislature could lawfully have authorized before the ordinance had passed, it could ratify afterwards when passed without the previous authority."

It is obvious that the Legislature could have authorized by previous enactment the Commissioners Courts of Clay and Jack Counties, acting within the purview of the constitutional provision investing them with jurisdiction over all county business, to appoint a surveyor for the purpose of ascertaining the divisional line between these two counties. Hence, under the rule as above announced, the Legislature could, within the limits of constitutional authority, validate such action so as to make it effective from its date. The orders must be regarded as binding upon the participating counties.

Authorities cited by the appellants indicate that since the Act of April 22, 1879, jurisdiction to enter orders of the character here involved is vested exclusively in the County Courts. Kaufman County v. McGaughey, 11 Texas Civ. App., 551. But these authorities do not, in our opinion, affect the soundness of our foregoing conclusion. They have reference to legislation subsequently arising.

2. Conceding, as we must, that the disputed strip is a part of Jack County, does it follow that the defendants, members of the Commissioners Court of Clay County, are individually liable for the seizure and sale of the plaintiff's horse?

This court was by statute (art. 1515, Sayles' Revised Statutes), empowered to levy and collect a tax for county purposes, upon all subjects of taxation in Clay County. As the subject of taxation here involved was not in Clay County, the levy of taxes against the plaintiff was unauthorized and illegal. The Commissioners Court of Clay County was

without jurisdiction to levy and collect a tax with reference to property in Jack County.

The rule is, that where a judge acts wholly without jurisdiction, he is not protected from civil liability on account of the fact that he acts in his official capacity. Cooley on Torts, 417. And by virtue of this rule it is here contended that, as the Commissioners Court of Clay County was without jurisdiction in this instance, its members cannot claim immunity on account of their official or judicial character. The application of this rule, however, is frequently attended with great difficulty. Throop on Public Officers, sec. 717. And we believe this to be a case in which the rule does not apply. Id., sec. 721.

When in 1893 the Commissioners Court of Clay County, under its statutory authority, assembled for the purpose of levying and collecting county taxes, it became its duty to exercise that power with reference to all subjects of taxation in its county. It was therefore charged with the duty of inquiring into the extent of the boundaries of the county, with the limits of which its jurisdiction was co-extensive. Hence the question was presented to it of determining, in the proper exercise of its taxing power, whether the disputed strip in which the appellee resides was a part of Clay County. This question involved more than a question of fact. It involved a question of law.

Was the action of the Commissioners Courts of the two counties in ordering the survey in 1876 authorized by the Constitution and laws of the State? This was the question presented for solution.

The Commissioners Court of Clay County answered the question in the negative, not certainly without at least color of reason for its conclusion; because, as disclosed by the record, it appears that the Commissioner of the Land Office did not recognize the Green and Calloway line as a valid boundary line between the two counties; that the court itself was advised by learned counsel that the orders and surveys of 1876 were invalid; and from the recitals in the Act of 1879 (16th Leg., 138), the first enactment on the subject after the Constitution of 1876, it even appears that the Legislature of the State held that there was no law in force under which boundary lines of this character could be ascertained. Besides, the evidence tends strongly to show that but for the survey of 1876 the strip in dispute should be considered a part of Clay County.

We have found that in passing upon this question in their official capacity, the commissioners acted in good faith, and from a sense of official duty.

We have thus a case in which a court, on account of a misconstruction of the Constitution and laws bearing upon the question, reached an erroneous conclusion in the attempted exercise of its appropriate jurisdiction. In other words, we have a case in which a court reached an erroneous conclusion about the location of a boundary line, on account of a misinterpretation of the law, when its construction, though incorrect, was not without color of reason to support it. In such a case we are

of opinion that the members of the court should not be held civilly liable for the consequences of an order void for want of jurisdiction. In its ultimate analysis, the question which the members of this court decided in discharge of their official duty, involving an inquiry into the extent of their statutory jurisdiction, was a question of law; and for an error upon such a question they should not be held civilly responsible.          Throop on Public Officers, secs. 717, 721; Anderson v. Roberts, 35 S. W. Rep., 416; Austin v. Vrooman, 14 Law. Rep. Ann., 139; Thompson v. Jackson, 27 Law. Rep. Ann., 92; Steele v. Dunham, 26 Wis., 399.

This court has held that the Commissioners Court, acting within the sphere of its powers, is a court of general jurisdiction.          Gaines v. Newbrough, 12 Texas Civ. App., 466; 34 S. W. Rep., 1049.          If in this instance it is not to be regarded as such a tribunal, the trend of modern decision is to repudiate the artificial reasoning perforce of which immunity was extended to judges of superior courts, though denied to inferior magistrates.          Rains v. Simpson, 50 Texas 500; Thompson v. Jackson, supra.

As the property was seized and sold over the protest of the plaintiff, it is believed that he could have had redress from Clay County for so much of its proceeds as went into the county treasury.          Snediker v. Marshall, 25 Texas, 460; Galveston v. Sydnor, 39 Texas, 236.

If, however, such redress was not adequate, and if, as was probably the case, the rights of a number of persons living on this disputed strip were involved, and a multiplicity of suits might have been avoided, the plaintiff might have resorted to equity to prevent the sale of his property.          George v. Dean, 47 Texas, 73; Steele v. Dunham, 26 Wis., 398.

3.          It follows from our findings of fact that the conduct of the defendants—all of them—was so wanting in malice or wantonness that no recovery for exemplary damages would lie.          Bradshaw v. Buchanan, 50 Texas, 494.

4.          The defendants G. C. Wright and C. R. Sanders must be held liable for actual damages as trespassers, in the execution of void process in a foreign county.          Besides, we fail to find any proposition questioning the liability of Wright for such damages.          Evidence competent and sufficient justifies the finding that the horse was of value of $75.

Our conclusion upon the whole case is that the judgment should be reformed and rendered against G. C. Wright and C. R. Sanders for the sum of $75, with legal interest from the date of the conversion, April 12, 1894, and that as to the remaining defendants it be reversed and rendered that the plaintiff take nothing, the costs of appeal to be taxed against appellee.          It is accordingly so ordered.

*Reformed and rendered in part.*
*Reversed and rendered in part.*

ON MOTION FOR ADDITIONAL CONCLUSIONS.

TARLTON, CHIEF JUSTICE.—This motion is granted, and the following conclusions filed:

1. The order of the Commissioners Court of Clay County appointed Sam Green to run the dividing line between Clay and Jack Counties, directed him to begin at the southeast corner of Clay County. The field notes of the dividing line as run by Green and Calloway, by virtue of the authority given them by the Commissioners Courts of Clay and Jack Counties, respectively, indicate that they began their work at the northwest corner of Wise County, and not at the southeast corner of Clay County. The order and the field notes, which were spread upon the minutes of the Commissioners Court of Clay County, speak for themselves, and will be found on pages 27, 28 and 29 of the transcript. It does not appear that any plat or map of the line surveyed by these surveyors was filed with their report.

2. As to the action of the Commissioners Court of Clay County with reference to the appointment made at the June term, 1891, of R. J. Brown to make a survey of the line between Clay and Jack Counties, we adopt the facts stated in connection therewith as found on pages 18 and 19 of the appellants' brief. It is unnecessary to set them out at length.

We find these additional conclusions, though we deem them immaterial. The line marked by the surveyors Green and Calloway was, as we find, sufficiently definite for identification. This appears from the testimony, and from the uncontroverted conduct of the officials of the two counties, who, it seems, for a series of years have had no difficulty in fixing the location of this line. The order of the Commissioners Courts of Clay and Jack Counties in adopting and improving this line should not be held to be void, because of the failure of the surveyor Green to comply literally with the directions of the court. The court adjudicated that the compliance was substantial.

Writ of error refused.