COMANCHE COUNTY et al. v. BURKS et al.
(No. 7,865.)

(Court of Civil Appeals of Texas. Ft. Worth, Feb. 21, 1914. Rehearing Denied March 4, 1914.)

1. COUNTIES (§§ 1, 47*)—ACTS OF COMMISSIONERS' COURT—LIABILITY.
   A county is by Rev. St. 1911, art. 1365, a body corporate and politic, and acts by the commissioners' court, and the acts of the court, made in good faith within the scope or apparent scope of its authority, are the acts of the county.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 1, 55; Dec. Dig. §§ 1, 47.*]

2. COUNTIES (§ 141*)—ACTS OF COMMISSIONERS' COURT—LIABILITY.
   Where a county in its corporate capacity commits a wrong in relation to property in which others are interested, the county, like any other corporation or like an individual, may be held liable.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. § 209; Dec. Dig. § 141.*]

3. COUNTIES (§ 195*)—ACTS OF COMMISSIONERS' COURT—LIABILITY.
   A county which has, through the commissioners' court, wrongfully diverted and appropriated the proceeds of a sale of school lands of the county is liable for the misappropriation.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. § 307; Dec. Dig. § 195.*]

4. OFFICERS (§ 114*)—JUDICIAL OR QUASI JUDICIAL CAPACITY—LIABILITY.
   Officers to whom is committed the power of acting in a judicial or quasi judicial capacity are not personally liable for an honest, though mistaken, exercise of their powers.
   [Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 187–192; Dec. Dig. § 114.*]

5. COUNTIES (§ 155*)—SCHOOL LANDS—PROCEEDS—INVESTMENTS—VALIDITY.
   Under Const. art. 7, § 6, providing that lands granted to the several counties, and the proceeds of sales thereof, shall be held by the county as a trust for the public schools, and that the proceeds shall be invested in bonds of the United States, or state, or counties, and that the counties shall be responsible for all investments, the commissioners' court of a county, in investing the proceeds on a sale of county school lands, acts in a judicial or quasi judicial capacity, and the county is responsible for investments made.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 223–225; Dec. Dig. § 155.*]

6. COUNTIES (§ 183*)—SCHOOL LANDS—PROCEEDS—INVESTMENTS—VALIDITY.
   The proceeds of a sale of school land of a county, required by Const. art. 7, § 6, to be invested in a specified class of bonds, may not be diverted to the general purposes of the county, and bonds issued by the county therefor, and bonds so issued are invalid.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 275–281, 283, 284; Dec. Dig. § 183.*]

7. COUNTIES (§ 155*)—SCHOOL LANDS—PROCEEDS—LIABILITY.
   Under Const. art. 7, § 6, making a county responsible for all investments of the proceeds of a sale of its school lands, a county is responsible for proceeds, regardless of the form or the legality of an investment attempted to be made by the commissioners' court.
   [Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 223–225; Dec. Dig. § 155.*]

8. COUNTIES (§ 196*)—SCHOOL LANDS—DIVERSION OF PROCEEDS—PARTIES ENTITLED TO SUE.

In the absence of any statute on the subject, an action by the treasurer and superintendent of schools of a county, and officers of independent school districts of the county, and citizens in their individual right, against the county and the commissioners' court, to ascertain the amount of proceeds of school lands which had been diverted, and to compel the commissioners' court to make a levy to the amount of the diversion, and thereby enforce the trust imposed on the county, is maintainable, though some of the plaintiffs are not entitled to sue.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*]

9. LIMITATION OF ACTIONS (§ 11*)—LIMITATIONS IN FAVOR OF COUNTY.

The duty of a county to make proper investments of the proceeds of a sale of its school lands, as required by Const. art. 7, § 6, is of a public nature and pertains to governmental affairs, within the rule that limitations are not available in such cases.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 35–39; Dec. Dig. § 11.*]

10. LIMITATION OF ACTIONS (§ 102*)—ENFORCEMENT—LIMITATIONS.

An action against a county to enforce the trust imposed on it by Const. art. 7, § 6, providing that county school lands and the proceeds of a sale thereof shall be held by the county in trust for the public schools of the county, is not barred by limitations, though the county wrongfully diverted the proceeds, but did not repudiate the trust.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–505; Dec. Dig. § 102.*]

11. COUNTIES (§ 213*)—ACTIONS—PRESENTATION OF CLAIM FOR ALLOWANCE—NECESSITY.

Rev. St. 1911, art. 1366, providing that no county shall be sued unless the claim relied on shall have been presented to the commissioners' court for allowance, and the court shall have neglected to allow the same, does not apply to an action to enforce the trust imposed on a county to hold county school lands and the proceeds on a sale thereof in trust for the benefit of the schools of the county.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 342, 343; Dec. Dig. § 213.*]

12. COUNTIES (§ 213*)—ACTIONS—PRESENTATION OF CLAIMS—MINUTES OF COMMISSIONERS' COURT.

Where the demand sued on was presented to the commissioners' court, but it refused to grant relief, the mere failure of the clerk to enter the proceedings on his minutes did not prevent an action against the county on the demand, though Rev. St. 1911, art. 1366, provides that no county shall be sued, unless the claim shall have been presented to the commissioners' court, and it shall have refused to allow the same, and though it was the duty of the clerk to enter the proceedings on his minutes.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 342, 343; Dec. Dig. § 213.*]

13. COUNTIES (§ 161*)—COUNTY FUNDS—INTEREST.

A county diverting the proceeds of the sale of its school lands is properly chargeable with interest on the misappropriated fund, whether the statute fixing the legal rate of interest is applicable or not.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 220; Dec. Dig. § 161.*]

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by Jokkie W. Burks, Treasurer of Comanche County, and others, against Comanche County and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

M. L. Harris, of Comanche, and Wilkinson & Baugh, of Brownwood, for appellants. Goodson & Goodson, of Comanche, for appellees.

CONNER, C. J. This suit was instituted against Comanche county and the members of its commissioners' court by Jokkie W. Burks, treasurer of Comanche county, joined by the superintendent of its public schools and by the officers and boards of trustees of several independent school districts of the county, and by a number of persons in their individual right as citizens.

The plaintiffs alleged in substance that, in accordance with the Constitution and laws of the state, there had been set aside to Comanche county, as a part of its permanent school fund, four leagues of land, which it was the duty of the commissioners' court to sell and invest the proceeds thereof as collected in interest-bearing securities, as provided in the Constitution, for the benefit of the public free schools of the county; that, under the terms of the Constitution, the principal from the sale of such lands constituted the permanent fund, and the interest derived therefrom constituted the available fund. It is further alleged that prior to November 28, 1891, the commissioners' court sold the land so granted to Comanche county, but instead of investing the proceeds of the sale, as provided by the Constitution, from time to time had diverted portions thereof and appropriated the same to the general purposes of the county, at the same time issuing what was termed "bonds of Comanche county" for the several sums so appropriated bearing 6 per cent. interest; that from one to ten of such bonds, inclusive, had been so issued stipulating for the payment by Comanche county to the permanent school fund of the county the several sums so appropriated, with interest thereon at the rate of 6 per cent. per annum. It was further alleged that a further diversion of the funds to the amount of $237.25 had been made by the action of the commissioners' court in appropriating that amount for other unauthorized purposes. It was further alleged that an auditor had been appointed to state the account against Comanche county, who had reported that the total amount of said unauthorized appropriation was $12,346.52, and that the interest accrued thereon to June 2, 1913, at the rate of 6 per cent. per annum, amounted to the

sum of $11,649.68. There are further allegations of the petition to the effect that, within the limit allowed by the Constitution and laws, the commissioners' court could add to its tax levy a sum sufficient to realize, during a series of years, a sum necessary to restore the unauthorized appropriations, and the prayer was for a decree fixing the amount of the permanent school fund which had been so diverted with interest, and for a mandamus compelling the commissioners' court to make the required levy.

The trial was before the court without a jury. He has filed conclusions of fact which we adopt, and upon which he entered judgment fixing the total amount of permanent and available school fund due by Comanche county at $20,695.59, with interest thereon from the date of the judgment at 4 per cent. per annum, from which judgment this appeal has been prosecuted.

[1] It is first insisted that the court erred in overruling appellant's general demurrer. The contentions are that the petition on its face shows an unlawful and an unauthorized appropriation of the county's permanent school fund on the part of the commissioners' court, and that the county cannot be made responsible for the wrongs of its officers. It has been frequently held that in certain cases a county cannot be held liable in damages for the wrongs or negligence of its officers. Heigel v. Wichita County, 84 Tex. 392, 19 S. W. 562, 31 Am. St. Rep. 63. But this rule of nonliability is not of universal application. See McQuillan on Municipal Cor. vol. 6, § 2605, citing numerous cases where the rule has been limited. And we are of the opinion that the principle invoked has no application in this case. Counties, by the express terms of our statute (R. S. 1911, art. 1365), are bodies corporate and politic and act by and through the commissioners' court, composed of the county judge and of the commissioners from the several commissioners' precincts provided by the law. The acts of the commissioners' court, therefore, in good faith performed within the scope, or apparent scope, of the powers committed to it under the Constitution and laws, are the acts of the county and not of the individual members composing the court.

[2] And where counties in their corporate capacities, as contradistinguished from their individual officers, commit a wrong in relation to property in which others are interested, the county, like any other corporation or individual, may be held liable. Thus in Watkins v. Walker County, 18 Tex. 586, 70 Am. Dec. 298, Walker county was held liable at the suit of the owner of certain lands in damages for timber taken from the land by an overseer of roads to repair a highway. In the course of the opinion it was said: "The duty of providing highways for the use of the public has been confided to the counties. The overseers of roads are the legally constituted agents of the counties from which they receive the appointment, and, what they do in the proper and necessary exercise of the authority conferred upon them, the county, in its corporate capacity, is responsible for." The principle announced in the case just cited was affirmed in the later case of Hamilton County v. Garrett, 62 Tex. 602. In Baker v. Panola County, 30 Tex. 87, our Supreme Court affirmed the right of Baker to recover from the county taxes illegally assessed against him and paid under protest. And in Boaz v. Ferrell, 152 S. W. 201, this court held to the effect that Jones county was liable for certain state taxes wrongfully deposited with its county treasurer by a tax collector.

[3] So here, if Comanche county has wrongfully diverted and appropriated funds of which the plaintiffs were the beneficiaries and as to which they have the right to herein complain, as we shall later have occasion to affirm, then we think Comanche county, rather than the several members of its commissioners' court, as is insisted, must be held liable. As further illustrating this conclusion, we cite the case of Gaines v. Newbrough, County Judge, 12 Tex. Civ. App. 466, 34 S. W. 1048, by this court, in which it was held that a county judge, commissioners' court, and sheriff were not personally liable in a suit for damages for false imprisonment by virtue of the execution of a writ by the sheriff, regular on its face, but which the members of the commissioners' court, in a mistaken exercise of a judicial act in fining the plaintiff for contempt, had ordered to be issued. So also in Wright v. Jones, 14 Tex. Civ. App. 423, 38 S. W. 249, also by this court, and in which writ of error was denied, it was held that members of a county commissioners' court were not liable in a civil action to one whose property had been wrongfully taken by the tax collector in pursuance of an order of the commissioners' court to collect a tax levied by them in a district which had erroneously been determined to be within their jurisdiction.

[4] The principle of the cases last noted may be said to be dependent upon the very generally recognized rule that officers, to whom have been committed the power of acting in a judicial or quasi judicial capacity, cannot be held liable for an honest, though mistaken, exercise of their powers. The further pertinent inquiries, therefore, arise as to whether the members of the commissioners' court, in diverting the funds, as alleged, were in the exercise of a judicial function, and whether Comanche county may be held liable as herein sought.

[5] Section 6, art. 7, of the Constitution, so far as applicable, provides: "All lands heretofore or hereafter granted to the several counties of this state for educational purposes, are of right the property of said counties respectively, to which they were granted,

and title thereto is vested in said counties; and no adverse possession or limitation shall ever be available against the title of any county. Each county may sell or dispose of its lands, in whole or in part, in manner to be provided by the commissioners' court of the county. * * * Said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein; said proceeds to be invested in bonds of the United States, the state of Texas, or counties in said state, or in such other securities and under such restrictions as may be prescribed by law; and the county shall be responsible for all investments; the interest thereon and other revenue except the principal, shall be available fund." A reading of this section of the Constitution makes it manifest, it seems to us, that the commissioners' court of the county, in making an investment of the proceeds therein specified, must act in a judicial or quasi judicial capacity. The county for which they act holds the proceeds as an express trust, and the investment thereof in the securities named in the Constitution or otherwise, as may be prescribed by law, necessarily involves an exercise of judgment and discretion. The counties also, by the express terms of the Constitution, are "responsible for all investments." As alleged, and as shown in the court's findings, the commissioners' court from time to time appropriated to the general uses of Comanche county specified sums of the proceeds which had arisen from the sale of the county school lands.

[6] Therefor, as also alleged and shown in the court's findings, the commissioners' court issued in a formal way what was termed "bonds of Comanche county," bearing 6 per cent. interest. While the bonds so issued are doubtless invalid, as such, for want of any authority for their issuance, yet there is nothing in the record that indicates that the county judge and commissioners so issuing said obligations acted corruptly or in bad faith, and it seems more than probable that, in construing their authority to invest the proceeds "in bonds of the United States, the state of Texas, or counties in said state," said court mistakenly concluded that the investment could be made in "bonds of Comanche county," as well as of other counties. Of course if the bonds so issued could be upheld as authorized under the terms of the Constitution and by many legislative acts, then Comanche county would concededly be responsible, not only for the several sums so invested, but also for the interest at the rate therein specified.

[7] But, regardless of the form or the legality of the investment attempted, it is undoubtedly true by the terms of the Constitution that Comanche county is "responsible for the investment."

[8] It is insisted, however, with much apparent force that the plaintiffs in this suit were not authorized to maintain the action; the contention being in substance that the state alone could do so. Again, referring to the section of the Constitution quoted, it will be seen that the sovereign power of the state, as represented by the delegates of the people in convention duly assembled, expressly declared that the lands granted to counties for educational purposes "are of right the property of said counties, respectively, to which they were granted, and title thereto is vested in said counties," and that "said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein." If there is any other provision of our Constitution, or any legislative act which confers a like right or similar duty upon any other officer or department of the state, we have failed to find it; and the explicit declarations quoted leave no room for the contention, it seems to us, that any other body, corporate or politic, in the autonomy of this state has either title to county school land, or can be held as trustees of the proceeds thereof.

In the recent case of Dubose v. Woods, 162 S. W. 3, by the Court of Civil Appeals for the Fourth District, it was held that resident citizens of Dunn county, who were qualified voters and owners of real and personal property therein, had sufficient interest to apply for mandamus to compel the commissioners' court of that county to perform its duty in dividing the county in commissioners', justice, and voting precincts.

In Dillon's Municipal Corporations (4th Ed.) vol. 2, § 909, it is said that: "In respect of property held by municipal corporations in trust or clothed with public duties, equity has always asserted its jurisdiction to see that the trusts were observed and its public duties in respect of such property discharged." And that while in England, and perhaps also in some of our states, a bill seeking the enforcement of such a trust must be filed by the Attorney General in behalf of the beneficiaries, it is said further (in section 914) that in this country "the right of the property holders or taxable inhabitants to resort to equity to restrain municipal corporations and the officers from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the taxpayers—such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of corporate property, or levying or collecting void and illegal taxes and assessments upon real property"—has, without the aid of statute provision to that effect, been affirmed or recognized in numerous cases in many of the states. It is said to be the prevailing and almost universal doctrine on the subject; this rule of right being expressly affirmed in Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070. The rule so stated, of course, would not apply in cases where the Legislature had prescribed a different method of

procedure, but appellants have cited us to no law which devolves upon any public officer of this state the duty of instituting a suit to enforce a trust of the character under consideration, and we have found no such law. So that, irrespective of the contention in behalf of appellee that this suit is in effect a suit by the state, we think the plaintiffs, or at least some of them, were entitled to maintain this action to enforce the trust undoubtedly devolved upon Comanche county by the terms of the Constitution. The plaintiffs comprehend, not only citizens of the county in their individual capacity, but also trustees of the independent school districts who are the beneficiaries of the fund, and the county treasurer and county superintendent, upon whom are imposed by law duties as to the proper distribution of the available fund arising from the interest from the permanent fund. It seems immaterial to us whether all of the plaintiffs were entitled to maintain the suit or not. It is to be remembered no individual recovery is sought, no judgment as such against the county is contemplated, but the action is purely one in equity seeking the issuance of a mandamus to require the county to fulfill its trust and restore the trust fund.

[9] But it is said that the action is barred under both the two and four years' statute of limitations. We think, however, there is nothing in this contention. In a very important sense the duty of Comanche county to make proper investment of the proceeds of its school lands was of a public nature and such as pertains to governmental affairs. In such cases it is very generally held that limitation or laches is not available. See Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419.

[10] Moreover, in the matter of the trust under consideration, we see no reason why the county should not be held to the same rules of law that are applicable to other trustees, and it is familiar doctrine that limitation will not run in favor of a trustee until after repudiation of a trust and notice thereof has been brought home to the beneficiaries. In the case before us it affirmatively appears from the court's findings that Comanche county never repudiated the trust herein involved. On the contrary, at the time of the several appropriations referred to, it issued specific obligations, or what at the time evidently was thought to be such, for the repayment of the sums, taken together with interest as stipulated. No act of repudiation of any kind or character is pretended.

[11] It is further insisted that the claim herein declared upon was never presented to the commissioners' court for allowance, and that therefore the action cannot be maintained. Our statute on the subject (article 1366) reads: "No county shall be sued unless the claim upon which such suit is founded shall have first been presented to the county commissioners' court for allowance, and such court shall have neglected or refused to audit and allow the same, or any part thereof." Compliance with this statute has many times been held to be necessary in order to maintain a suit against the county. But we are of the opinion that the statute has no proper application here. The suit is not by the plaintiffs, or any one of them, for the recovery of a debt or damages, but is one wherein the plaintiffs present to the court a prayer for the discharge of a duty imposed by the Constitution and laws of the state in behalf of the public free school fund.

[12] Besides, the court finds that the complaint made in the plaintiffs' petition was in fact presented to the commissioners' court of Comanche county, and that, while the members expressed the conviction that the restoration sought should be made, the court refused to comply with the request of the petitioners on the ground that they doubted their authority to do so, in the absence of a decree of a court of competent jurisdiction so decreeing. It is insisted, however, that this action is not evidenced by any order of the commissioners' court entered upon its minutes. Nothing, however, in the article quoted directs the entry of presentation and refusal to be entered upon the minutes or declares a penalty for failure to do so, and we think it would be extremely technical to now deny the relief sought in this case merely because the clerk of the commissioners' court failed to enter the proceedings upon his minutes, though doubtless it was his duty to do so.

Several other questions are specifically presented which have been incidentally disposed of by what we have already stated, and we will therefore discuss but one further assignment.

[13] The judgment fixes the total amount of the permanent school fund of Comanche county that had been unlawfully converted as alleged at $12,583.77, to which the court added interest thereon from a date named in the judgment to the date of the trial at the rate of 4 per cent. per annum; the total interest so allowed amounting to $8,111.82. It is earnestly insisted that interest was not allowable; the theory of the contention being that the interest in its nature is but damages which are not recoverable because of the rule hereinbefore discussed of nonliability of a county for the wrongs or negligence of its officers. We feel that this contention must also be overruled. It is true that it may be well doubted whether our statute, fixing the legal rate of interest at 6 per cent. per annum, has application, but we think the court's action in imposing interest should, under the circumstances, be upheld on general principles. Thus in Lewin on Trusts, vol. 1, p. 338, it is said: "It may be stated as a general rule that, if a trustee be guilty of any unreasonable delay in investing the fund or transferring it to the hand destined to receive it, he will be answerable to the cestui

que trust for interest during the period of his laches; and a trustee has been decreed to pay interest even where it was not prayed by the bill, and, in a suit establishing laches, will be decreed to pay personally the cost up to the hearing of a suit arising out of the laches."

It is further stated in Perry on Trusts, vol. 1 (4th Ed.) § 468: "It is difficult to lay down any general rule that is equitable and applicable to all cases, as to the interest that trustees shall pay upon trust funds in their hands. In England, if trustees suffer money to remain in their own hands, or in the hands of third persons, or in bank for an unreasonable time, in addition to their liability for its loss during such delay, they will be charged with interest at the rate of 4 per cent.; but if the trustees are grossly negligent or corrupt, or improperly call in the money from a proper investment, and suffer it to lie idle, or if they use it in trade or speculation, or invest it in improper places, the court will charge them with interest at the rate of 5 per cent.; and, in certain special cases of misconduct, the court will order annual or semiannual rests, for the purpose of charging them with compound interest. In the United States there is no law by which different rates of interest can be applied to different degrees of negligence or misconduct; and the only question here is whether simple or compound interest shall be imposed. The general rules, so far as they can be drawn from all the cases, are as follows: (1) If a trustee retains balances in his hands which he ought to have invested, or delays for an unreasonable time to invest, or if he mingles the money with his own, or uses it in his private business, or deposits it in bank in his own name, or in the name of the firm of which he was a member, or neglects to settle his account for a long time, or to distribute or pay over the money when he ought to do so, he will be liable to pay simple interest at the rate established by law as the legal rate, in the absence of special agreements."

Appellees have made no complaint of the action of the court in fixing the interest allowed at the rate of 4 per cent. rather than at the legal rate prescribed under our statute, and, in view of the authorities cited, we certainly think, as before indicated, that appellants have no cause of complaint in this respect.

We conclude on the whole that the court's findings of fact should be approved, and the judgment affirmed.