Baldemar **TORRES** et al., Appellants,

v.

R. R. **OWENS** et al., Appellees.

No. I.

Court of Civil Appeals of Texas.

Corpus Christi.

May 28, 1964.

Rehearing Denied June 18, 1964.

Wm. R. Edwards, of Edwards & De-Anda, Corpus Christi, for appellant.

Ellis Clark, Rockport, M. Harvey Weil, of Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellee.

GREEN, Chief Justice.

Motion for summary judgment filed by appellees, defendants below, based on their claim of governmental immunity from tort liability, was granted by the trial court, and a take nothing decree entered; hence this appeal. We affirm the judgment.

Appellants, Baldemar Torres and wife, Encarnacion Tamez and wife, and Candelario Torres and wife, are the parents of three minors who drowned May 25, 1958, while swimming in Aransas Bay near the the public beach at Rockport, Aransas County, Texas. Appellees, being sued in this cause as individuals, were members of the Board of Navigation and Canal Commissioners of Aransas County Navigation District No. 1 at all times in 1957 when the events alleged to have been the proximate cause of the death of the three children occurred. The Aransas County Navigation District No. 1, which includes all of Aransas County and is hereafter referred to as the Navigation District, is a political subdivision of the State of Texas, created under the provisions of Article 8263h, Vernon's Ann.Tex.St. Its governing body consists of three commissioners elected by the qualified voters of the district.

In April, 1954, the Navigation District employed a firm of consulting engineers to prepare a long range plan for development of additional navigation facilities for both recreational and commercial purposes at Rockport and Fulton and in the area between said towns located on and adjoining Aransas Bay, all in Aransas County. The plan was to include facilities needed immediately and to be needed in the near future. A written report entitled "Development Plan for Additional Navigation and Allied Facilities, Aransas County, Texas" was delivered by the engineering firm to the Board of Commissioners in September, 1954. One portion of this report concerned the suggested development for recreational boating purposes of the Little Bay area. Little Bay was a small shallow body of water, being less than six hundred acres in area,

lying between Rockport and Fulton and practically enclosed by the mainland, Frandolig Island and a sand bar extending from the mainland to the southern tip of the island, which bar separates Little Bay from Aransas Bay.

The development plans required a large amount of dredging and the creation of an artificial beach as the by-product of such dredging was discussed. From experience these commissioners knew that they were faced with a serious problem in getting dredged sand to remain where deposited to serve the purpose for which it was placed there. They had learned that sand fills in that area even when protected by expensive groins or retaining walls, washed away by the action of wind and water current. The appellees, as commissioners of the Navigation District, discussed among themselves and with their legal counsel the feasibility of dredging and depositing sand on the bar between Little Bay and Aransas Bay to determine whether the sand fill when deposited on the bar would remain or be washed away by wind and current. If the fill did remain, this would be useful in their plans for further development, in accordance with the engineers' report.

Consequently, appellees as Commissioners of the Navigation District at the meeting of the Board of Commissioners of March 28, 1957, entered into an oral contract with a construction company for this work. *No engineer was employed by the district to supervise this dredging.* The dredge worked five days, taking the sand from Aransas Bay and depositing it on the bar above mentioned. The total expense amounted to $6,412.50.

Unfortunately, as the result of the dredging operation of April, 1957, a large hole with steep sides, approximately six feet deep, was dredged in the gently sloping bottom of Aransas Bay near the shore line of the bathing beach at Rockport. It was here that the three children drowned.

This is the second appeal of this cause. Originally, appellants filed suit against the Navigation District and the individual commissioners, pleading only general allegations of negligence. The trial court, on a hearing on the pleadings alone, dismissed as to all parties. On appeal the judgment was affirmed as to the Navigation District, the court holding that as a governmental agency it was not subject to tort liability in a suit of this nature. However, the appellate court held that there was no evidence on which the trial court could base its findings that at all times complained of the individual defendants were acting within the scope of their official duties as commissioners, and reversed as to said parties, saying, "The court has, therefore, while considering the pleadings, decided a fact which would defeat plaintiffs in their action. The record affords no basis for the finding of fact." Torres, et al. v. Aransas County Navigation District No. 1, et al., Tex.Civ.App., 346 S.W.2d 903, n. w. h.

Upon remand to the trial court, appellants amended their petition as to these appellees, claiming individual liability against them, and alleging as specific grounds of negligence and proximate cause the violation by appellees of Arts. 3271a, Sec. 19, and 8263h, Sec. 41, V.A.T.S., in that no registered professional engineer was employed to supervise the dredging or to report on the work after its completion. Appellees filed their motion for summary judgment which appellants duly answered. There is no dispute as to any fact material to the judgment of the trial court. That the commissioners were at all relevant times acting in good faith is not denied. What the navigation commissioners did and how they did it is uncontroverted according to the depositions and affidavits in the record. Issues of fact as to whether appellees were guilty of negligence, and whether such negligence, if any, proximately caused the drownings, are present; however, such negligence questions are not material to the legal issue of immunity from liability of the appellees.

The issue on this appeal is whether the appellees are entitled to the defense of governmental immunity as a matter of law.

Appellants base their appeal on three points of error, to the effect that the trial court erred in granting the summary judgment for the reason that the evidence showed that appellees failed to perform the ministerial duties required of them by Article 3271a, Sec. 19, V.A.T.S. (Point 1) and also by Article 8263h, Sec. 41, VA.T.S. (Point 2), such failure in each instance being alleged to be negligence and a proximate cause of the drownings; and (Point 3) that with respect to the beach building and dredging in question, appellees were acting outside the scope of their authority as navigation commissioners and thus had abandoned any cloak of governmental immunity that may have been available to them.

The statutory provisions relied on by appellants to establish personal liability against the commissioners are as follows:

"After the first day of January, 1938, it shall be unlawful for this State, or for any of its political subdivisions, for any county, city, or town, to engage in the construction of any public work involving professional engineering, where public health, public welfare or public safety is involved, unless the engineering plans and specifications and estimate have been prepared by, and the engineering construction is to be executed under the direct supervision of a registered professional engineer; provided, that nothing in this Act shall be held to apply to any public work wherein the contemplated expenditure for the completed project does not exceed Three Thousand ($3,000.00) Dollars. Provided, that this Act shall not apply to any road maintenance or betterment work undertaken by the County Commissioners' Court." Article 3271a, Section 19, Revised Civil Statutes of Texas (1925), as amended.

"All work contracted for by the navigation and canal commissioners, unless done under the supervision of the Government of the United States, or the proper department or officer thereof, shall be done under the supervision of the engineers; and, when the work is completed according to contract, the engineers shall make a detailed report of the same to the navigation and canal commissioners, showing whether the contract has been fully complied with, according to its terms, and if not in what particular it has not been complied with." Art. 8263h, Sec. 41, Revised Civil Statutes of Texas.

The record on appeal reflects that an issue of fact does exist as to whether a competent registered professional engineer, if employed to supervise the dredging project, would have authorized the dredging of the hole in question in the close proximity to the bathing beach.

Appellants recognize the general rule of law that public officers are not personally liable in tort action for acts performed within the scope of their quasi-judicial duties. However, appellants seek to make a distinction in the nature of the navigation commissioners' duties between their decision to do the dredging work and the actual performance of the work once the decision had been made. They state that the decision to undertake the dredging, provided the commissioners had authority to make such decision, involved discretion on their part and could not result in civil liability. Appellants argue, however, that in the actual performance of the dredging, appellees were confronted with certain mandatory ministerial duties as provided in the statutes quoted for the non-compliance with which they could be held personally liable. Specifically, appellants contend that in proceeding with this dredging without employing a registered professional engineer to supervise the work and report thereon, appellees failed to perform ministerial duties and were thus removed from the protection of the rule of official immunity. As their authority for their contention, appellants

cite the following extracts from Rains v. Simpson, 50 Tex. 495:

"The application of the principle of immunity from private suit has been a source of difficulty, the practical solution which depends upon whether the given act was ministerial or judicial. As a general rule, in the former case the action will, and in the latter it will not, be sustained.

"The distinction between the two is thus defined: 'Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial.'"

We disagree with appellants' point that the commissioners were acting without discretion and only in a ministerial capacity in their decision to let this contract of dredging to the contractor as they did. The decisions of the commissioners cannot be so separated. The entire matter of deciding on the work to be done, the contractor to do the work, the terms of the contract, whether plans and specifications and supervision by an engineer were necessary, whether the public work involved professional engineering, whether public health, public welfare or public safety were involved, were problems involving judgment and discretion. All of these and other problems involving this work were determined at official meetings, as shown by the minutes of the meetings attached to the affidavits. We do not believe, and are not willing to find, that the law prescribed and defined the duty to be performed by these commissioners with such precision and certainty as to leave nothing to the exercise of discretion or judgment. All of their actions in connection with the dredging in question involved the exercise of discretion and judgment in deciding what should be done. In determining the action to be taken, the undisputed facts show that at all times they received and acted upon the legal advise of their lawyer who was present at all of their meetings.

As stated in 47 Tex.Jur.2d 158, Public Officers, "An executive officer acts in a quasi-judicial capacity when, in the exercise of his functions, he is required to pass on facts and determine his actions by the facts found."

■ It is not necessary that we determine, and we are not determining, whether under the facts as shown the commissioners violated the terms of the statutes above quoted in connection with the dredging work. However, if it be established that in failing to employ an engineer to supervise the work in question they did act in violation of the law, such fact would not cause them to lose the cloak of official immunity from tort liability in this cause. If the commissioners were acting within the scope of their official authority in the actions taken by them with respect to the dredging in question, they cannot be held liable in this suit, regardless of whether they may have misinterpreted or violated a law. Turner v. Pruitt, 161 Tex. 532, 342 S.W.2d 422 (1961); Campbell v. Jones, 153 Tex. 101, 264 S.W.2d 425; Torres, et. al. v. Aransas County Navigation District No. 1, et. al. (Tex.Civ.App., 1961) 346 S.W.2d 903, n. w. h.; Morris v. Nowotny, et al. (Tex.Civ.App., 1959), 323 S.W.2d 301, writ ref. n. r. e.; Reid v. McKinney Independent School District (Tex.Civ.App., 1959), 322 S.W.2d 647 (writ ref. n. r. e.); Harwell v. Ward County (Tex.Civ.App., 1958) 314 S.W.2d 868 (writ ref. n. r. e.); Dallas County Flood Control District v. Fowler (Tex.Civ.App., 1955), 280 S.W.2d 336 (writ ref. n. r. e.); Gallaway v. Sheppard (Tex.Civ.App., 1935), 89 S.W.2d 417 (writ dis.); Comanche County v. Burks, (Tex.Civ.App.1914), 166 S.W. 470 (writ ref.); Wright v. Jones, 14 Tex.Civ.App., 423, 38 S.W. 249 (writ ref.).

In Campbell, et al. v. Jones, et al., 153 Tex. 101, 264 S.W.2d 425, a school teacher, who had been discharged because the board

of trustees ruled that she could not qualify under the minimum standard set by the State Superintendent, sued the trustees individually on her contract. Prior to filing the suit, the State Board of Education at a hearing determined that the school board had been wrong and that the contract was valid. In the meantime, however, the trustees had employed another teacher and had exhausted the district funds from which teachers' salaries were paid; hence, the teacher could not recover from the Board. In holding that the individual trustees were not liable, although an erroneous ruling had been made from which the plaintiff had suffered damages, the court quoted with approval from Mechem on Public Officers thus:

"§ 718. School Officers not liable for Errors in Judgment.—Being required by law to exercise their judgment and discretion in the management and control of the schools within their jurisdiction, it is well settled that, *like other quasi-judicial officers,* they cannot be held liable to an individual for any injury which he may have sustained by reason of any error of judgment, however great, committed by them while acting honestly and in good faith within their jurisdiction." Emphasis ours.

"§ 719. Are liable only when actuated by malice.—Such officers are, however, held liable when, and only when, in the exercise of the powers conferred upon them, they have acted wilfully or maliciously."

Chief Justice Hickman proceeds to say:

"That is the rule in this State. Comanche County v. Burks, Tex.Civ.App., 166 S.W. 470, error refused; Wright v. Jones, 14 Tex.Civ.App. 423, 38 S.W. 1249, error denied; 34 Tex.Jur., pp. 466 et seq."

In Reid v. McKinney Independent School District, supra, suit was brought by a contractor against the school district and the trustees individually for alleged wrongful termination of a construction contract. In holding the trustees not individually liable, the opinion quoted from 37B Tex.Jur. 253, Sec. 98, the rule as follows:

"When acting within the scope of their duty, school officials are responsible only for injuries resulting from corrupt motives, but not from mistakes of law or judgment."

In Gallaway v. Sheppard, supra, the State Comptroller was held not personally liable when he wrongfully issued a deficiency certificate to the damage of an individual. We copy from the opinion as follows:

"In the issuance of such deficiency certificate, the comptroller was merely performing an act within the scope of his public duties, and owed no duty to appellant in such issuance different from that he owed to all the public. As such public officer in the discharge of his official duties, mistakes of judgment, or improper construction of the laws defining his duties, do not give rise to a personal action against him, though some private individual may suffer loss as the result thereof. Such is the general rule founded upon sound public policy."

We quote from the opinion in Dallas County Flood Control District v. Fowler, supra, the following:

"The authorities clearly and conclusively hold that members of the Board of Directors or Supervisors of a governmental agency are not personally liable for acts of commission or omission in performance of their official duties. 30 Tex.Jur. 261 says: 'As a rule, municipal officers are not personally liable for acts performed within the scope of their public duties, * * *'. Public officials are liable personally when and only when, in the exercise of the powers conferred upon them, they have acted wilfully, maliciously or when actuated by malice."

Comanche County v. Burks, Tex.Civ. App., 166 S.W. 470, writ ref., quoted with approval by the Supreme Court in Campbell v. Jones, supra, is a case in which the members of the Commissioners' Court were held not personally liable where they sold county lands and improperly invested the proceeds in violation of the Texas Constitution. We quote from the opinion as follows:

"The principle of the cases last noted may be said to be dependent upon the very generally recognized rule that officers, to whom have been committed the power of acting in a judicial or quasi judicial capacity, cannot be held liable for an honest, though mistaken, exercise of their powers."

The only question remaining for our determination is: Were appellees acting within the scope of their official duties as Navigation Commissioners with respect to the dredging in question? Appellants by their third point contend that they were not. We hold that the undisputed facts show that they were so acting.

As heretofore stated, the commissioners took steps authorizing the performance of, and completed, certain dredging and deposit of a spoil levee which was part of an overall navigation project, clearly within the purview of their power and authority. The levee being thrown up was part of and was useful in the operation of the district's waterways. The commissioners were not building an apartment house or doing some other work entirely disconnected with navigation purposes. The work being performed was a first step in a project which was ultimately completed by the district, as shown by affidavits and depositions in the record.

The Navigation District operates under the provisions of Article 8263h, V.A.T.S., and certain other applicable statutes, such as Article 8247a and 8247b. The authority for such statutes comes from the conservation amendment to the Constitution, Article 16, Section 59(a), Vernon's Ann.St.

Under the provisions of these statutes, the project of which this dredging was a part was clearly work which the commissioners were authorized to perform within their official duties. It has already been established by the authorities cited above that if acting in good faith they misinterpreted or violated the provisions of the law in performing their duties as they honestly understood them to be, this would not deprive them of their immunity from tort liability.

We find that the record shows without dispute that at all times when the acts complained of by appellants occurred, appellees were public officials of a state agency acting in good faith on advice of legal counsel in a quasi-judicial, discretionary capacity within the scope of their official duties, and are entitled to immunity from liability in this cause.

The summary judgment was properly granted.

Affirmed.