W. G. REID, Appellant,

v.

McKINNEY INDEPENDENT SCHOOL
DISTRICT et al., Appellees.

No. 15957.

Court of Civil Appeals of Texas.

Fort Worth.

March 6, 1959.

Rehearing Denied April 10, 1959.

Wm. Andress, Jr., Dallas, for appellant.

J. E. Abernathy, McKinney, Burford, Ryburn & Ford, Sam P. Burford and Clarence A. Guittard, Dallas, for appellee McKinney Independent School Dist.

Cantey, Hanger, Johnson, Scarborough & Gooch, and J. A. Gooch, Fort Worth, for appellee Wyatt C. Hedrick.

C. C. Renfro, Dallas, for appellee Luther Truett et al., former-trustees of School Dist.

BOYD, Justice.

W. G. Reid, who had a contract with McKinney Independent School District for school construction work, sued the District, alleging that it wrongfully terminated the contract before its completion, thereby depriving him of $42,059.50 in anticipated profits; that work in addition to that called for in the original contract was requested by the District and performed by him, for which the District owed him the sum of $182,350.89; and that he was entitled to a judgment for $50,000 attorney's fees. Reid made Wyatt C. Hedrick, the District's architect, and the individual Trustees parties, demanding judgment against them, jointly and severally, for the $42,059.50 in lost prof-

its and for $50,000 as exemplary damages. Trial to the court resulted in a judgment against the District for $3,608.27 found to be owing on the contract, and a take nothing judgment as to all other demands. Reid appeals.

Appellant alleged that about June 19, 1953, "without justification under the terms of said contract, and without any violation by plaintiff of the terms thereof, and without any certification of default by the architect, the School District gave plaintiff notice of cancellation and annulment of his contract, and required him to leave the job and stay away from it, * * *." There were detailed allegations as to the work done by appellant, the manner of its performance, and the breach of the contract by the District, which, in our view of the disposition of the case as to the District, need not be set out in full.

◼ The District contends that even if any of appellant's claims are justly due, which it denies, he is not entitled to a judgment against the District because of his failure to establish that the District has funds available to pay such claims.

Appellant alleged that at the time the contract was entered into the District had sufficient funds on hand derived from the sale of bonds and allocated for the purchase, construction, equipment or repair of school buildings, to pay the amount of the contract and all extra work incurred in connection therewith, and continued to have such funds on hand when the contract was terminated. He alleged in the alternative that if there were not such funds to pay his claims, the Trustees were guilty of misusing, misappropriating, and diverting the funds.

The court found:

"1. Pursuant to an election held in December of 1951, the McKinney Independent School District authorized the issuance of bonds in the aggregate principal amount of $600,000 for the purchase, construction, equipment or repair of buildings, other than wood, and purchase of sites therefor.

"2. Such bonds were sold to Rauscher, Pierce & Company for a total consideration of $617,942.98, the additional amount representing premium and interest payments. $5,530.42 was realized as interest from government securities, making a total of $623,473.42 actually received by the District by reason of such bond election.

* * * * * *

"6. The contract price for all work to be performed by Reid was $489,282.00.

"7. During the course of the contract, additions and changes were made by written change orders in accordance with the contract in the total amount of $27,165.22. Final adjustment of debits and credits in accordance with the contract resulted in the additional sum of $608.27, making a total sum of $517,055.49 payable under the contract. All of this amount was paid by the School District except the sum of $3,608.27. The School District at all times admitted its liability for said sum of $3,608.27 and constructively tendered same into court.

* * * * * *

"35. Prior to February 9, 1954, several months following completion of the job by the bonding company, neither the School District nor the individual Trustees nor Mr. Hedrick or his representatives had knowledge or notice of any claim by Reid for alleged extra work or for breach of the contract or for loss of profits or for exemplary damages or for attorneys fees.

"36. Until the School District received the letter of February 9, 1954, from Reid's attorney (Exhibit No. 49) it had no notice or knowledge that Reid was making claims against the District for alleged extra work or for loss of profits or in connection with any matter

involved in this case. At such time the District had either expended, or legally obligated itself to expend, for purposes properly included in the bond issue, all of the proceeds therefrom with the exception of $163.21. (Defendant's Exhibits 100–212 inclusive and Defendant's Exhibits 252A, 252B, 253A and 253B)."

It was further found that the District did not breach the contract, but that it was breached by appellant.

The court concluded:

"12. Since there were no funds on hand or available to the School District at the time the District first had notice or knowledge of Reid's claims against it, or at the time any demand was made by Reid for the payment of such claims, or at the time suit was filed and tried, he may not recover against said District."

Article 2749, Vernon's Ann.Civ.St., provides that the trustees shall "contract with teachers and manage and supervise the schools, * * * they shall approve all claims against school funds of their district; provided, that the trustees, in making contracts with teachers, shall not create a deficiency debt against the district."

Article 2827 is as follows:

"Authorized expenditures. The public free school funds shall not be expended except for the following purposes:

"1. The State and county available funds shall be used exclusively for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents, when these salaries become due before the school funds for the current year become available; provided that no loans for the purpose of payment of teachers shall be paid out of funds other than those for the then current year.

"2. Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employes, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the State available school fund in any city or district is sufficient to maintain the schools thereof in any year for at least eight months, and leave a surplus, such surplus may be expended for the purposes mentioned herein."

In Collier v. Peacock, 93 Tex. 255, 54 S.W. 1025, 1026, it was held that a debt contracted for a teacher's salary which would cause a deficiency in the school fund was invalid, "would be a violation of the law," and would constitute no claim against the school district.

In Stephenson v. Union Seating Co., 26 Tex.Civ.App. 16, 62 S.W. 128, 129, error refused, it was held that warrants issued for payment of school furniture, which had been approved by the County Superintendent, who had apportioned funds for their payment, which funds were thereafter paid out in satisfaction of other claims, could not be paid although the warrants were issued prior to the fixing of other liability against the funds so allocated. The court said: "To allow the construction contended for by appellee would permit the school funds for subsequent years to be entirely consumed in deficiency debts improvidently created in previous years,

and would result in an entire suspension of the public school until the deficiency was paid. It is clear to our minds that the law contemplates the maintenance of a public school for at least a part of each year, and we cannot place a construction upon the law which might defeat its chief purpose. * * * While the article applies alone to contracts for teachers' salaries, we think the construction placed upon it by the supreme court applies with equal force to the articles controlling the purchase of school furniture." To the same effect is the holding in Aldine Independent School District v. Standley, 154 Tex. 547, 280 S.W. 2d 578, 586, in which case it was said that it is "the well established rule that valid claims against a school district cannot be paid by the district unless funds for the current year of the claim are available to pay said claim at the time of demand or judgment upon such claim."

In Crowell Independent School Dist. v. First Nat. Bank, Tex.Civ.App., 163 S.W. 339, and Trustees of Crosby Independent School Dist. v. West Disinfecting Co., Tex. Civ.App., 121 S.W.2d 661, it was held that the petitions were fatally defective in failing to allege that funds were available to pay the claims sued upon.

The evidence amply supports the court's finding that no funds were available to pay appellant's claim, other than for which judgment was rendered. We think the court correctly concluded that appellant was not entitled to a greater recovery against the district.

■ Appellant pleaded and contends that the Trustees were liable individually because they made no investigation of the facts upon which to base their judgment, but without question followed the recommendations of the Architect; they acted in disregard of appellant's rights at meetings not properly called and without keeping proper records; they, at an illegal meeting, ousted appellant from the job for failure to show sufficient progress, basing their ouster on reports of the Architect when the Architect had not inspected the work for weeks, and his reports to the Trustees were admittedly erroneous and incomplete; for alleged nonpayment of bills, when all bills incurred prior to May 1, 1953, had been paid, since which date appellant had not been paid the monthly estimates for work done; the Trustees admitted that "only a few odds and ends remained to be done on five of the buildings"; that if the District did not have funds with which to pay appellant's claim, the Trustees diverted the funds to other purposes after they had been earmarked for satisfaction of claims arising out of the execution of the contract; the Trustees fraudulently induced appellant to bid on and accept the contract knowing that said funds were not available and that appellant would incur great expense for which the District would not be liable; and that the Trustees are therefore not protected by good faith exercise of their judgment and discretion.

In this connection the court found: "26. All of the Former Trustees named as defendants in this case, when acting individually and when acting as members of the Board of Trustees of the School District, were performing their duties as trustees of the School District, and I find that none of such individual trustees acted arbitrarily, unreasonably or with a willful disregard of the rights of plaintiff Reid. None of them were experts in the construction field. Said trustees relied upon their duly selected architect and the advice of their selected attorney, and in so doing they acted as ordinarily prudent men would have acted. There was no malice toward Reid on the part of any of said defendant trustees." Without setting it out, we think the evidence was sufficient to support said findings.

"When acting within the scope of their duty, school officials are responsible only for injuries resulting from corrupt motives, but not for mistakes of law or judgment. As individuals, they may, of course, be li-

able in damages for their fraudulent representations, and for other torts and crimes, such as misappropriation and diversion of district funds." 37–B Tex.Jur., p. 253, sec. 98.

In Campbell v. Jones, 153 Tex. 101, 264 S.W.2d 425, 427, the court quoted from Mechem on Public Officers, as follows:

" '§ 718. School Officers not liable for Errors in Judgment.—Being required by law to exercise their judgment and discretion in the management and control of the schools within their jurisdiction, it is well settled that, like other quasi-judicial officers, they cannot be held liable to an individual for any injury which he may have sustained by reason of any error of judgment, however great, committed by them while acting honestly and in good faith within their jurisdiction.

" '§ 719. Are liable only when actuated by Malice.—Such officers are, however, held liable when, and only when, in the exercise of the powers conferred upon them, they have acted wilfully or maliciously.' "

We do not think the court erred in rendering judgment for the individual Trustees.

 Appellant says that "When Hedrick through his representatives attempted to prevent Reid, the low bidder, from getting the contract; interfered with his choice of subcontractors; delayed essential drawings and information throughout the job; ignored requests for time extensions; consistently made arbitrary and costly decisions against Reid; and ultimately made false reports to the owner resulting in throwing Reid off the job, he is: (1) responsible for Reid's damages resulting therefrom; and (2) is guilty of legal malice and liable for exemplary damages."

The court found, and again we think upon evidence which is legally sufficient, specifically that Hedrick was not guilty of

the wrongs charged against him by appellant, and concluded those findings with the following:

"67. The acts of Hedrick and the defendant trustees in connection with the performance of the contract by W. G. Reid and otherwise were not done arbitrarily, unreasonably nor with willful disregard of the rights of the plaintiff.

"68. No action on the part of Hedrick or of the defendant individual trustees was such as to constitute malice as a matter of law or otherwise."

We have carefully considered the lengthy record and the exhaustive briefs and oral arguments, and find no reversible error. The judgment is accordingly affirmed.