**BOARD OF TRUSTEES OF CRYSTAL CITY INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**John BRIGGS, Appellee.**

**No. 7404.**

Court of Civil Appeals of Texas, Beaumont.

Oct. 26, 1972.

Motion for Rehearing Overruled Nov. 22, 1972.

Pat Maloney, San Antonio, for appellant.

Emerson Banack, Jr., San Antonio, for appellee.

KEITH, Justice.

The School District filed suit in the District Court of Zavala County to set aside the decision of the Commissioner of Education of the State of Texas, affirmed by the State Board of Education, that appellee Briggs' employment contract as superintendent with the School District was valid and binding and that he could be assigned only to the position of superintendent of the School District. Briggs filed a cross action seeking a writ of mandamus to compel the District to pay to him the amount due under his employment contract less certain deductions. Judgment was entered upholding the decision of the State Board of Education and that of the Commissioner. The court also awarded Briggs $21,000 on his cross action and ordered the issu-

ance of a writ of mandamus against the District to compel payment thereof.

The District duly perfected its appeal to the Court of Civil Appeals, Fourth Supreme Judicial District of San Antonio, and the cause was transferred to this court by the Supreme Court in equalizing the dockets of the several intermediate appellate courts.

By a written contract dated February 25, 1970, Briggs was employed by the District as superintendent for a three-year period beginning July 1, 1970. On August 6, 1970, after Briggs had entered into the discharge of his duties pursuant to the contract, the Board of Trustees of District adopted a motion that he be relieved of his duties. The next day the Board elected a new superintendent to take office immediately.

Briggs demanded written reasons for his discharge and a hearing thereon before the Board of District. Thirty-nine specific grievances were filed and an extensive hearing was held before the Board. The Board, by a majority vote, confirmed the dismissal without making specific findings as to any of the several grievances set forth in its charges. Briggs timely appealed this decision to the State Commissioner of Education and another hearing was had before the Commissioner; and, at the conclusion of this hearing, the dismissal of Briggs was set aside.[1]

Having made these findings of fact, the Commissioner then held that the contract "is valid and binding on both parties for the period of the contract" and that Briggs "can be assigned [by District] only as superintendent of schools in the full sense of that office."

The parties having followed implicitly the provisions of Subchapter C, § 13.101 et

---

1. The Commissioners found that the District Board "has failed to show justifiable cause to support its reassignment and/or dismissal" of Briggs and continued: "With respect to the 39 specific grievances, some of which by consent of counsel of record were dropped as possibly without merit, I find none of the grievances, considered individually or when considered collectively are such as would justify appellant's [Briggs'] dismissal."

seq., Education Code, V.T.C.A., the District's appeal from the decision of the Board of Education was limited to the grounds set forth in § 13.115(c). It could prevail upon appeal only if the decision of the state board "(1) is not supported in the record by substantial evidence; (2) is arbitrary or capricious; or (3) is in error in the application of existing law to the facts of the case." This is, in essence, a statutorily authorized appeal under the substantial evidence rule of procedure so well known in our practice. Gragg v. Hill, 58 S.W.2d 150, 151 (Tex.Civ.App., Waco, 1933, error ref.); McRae v. Lindale Independent School District, 450 S.W.2d 118, 121 (Tex.Civ.App., Tyler, 1970, error ref. n.r. e.). See also, Hubert, "Dismissals of Public-School Employees in Texas . . ." 44 Tex.Law Rev. 1309, 1325 (1966).

■ Under this rule of procedure, it is our duty to determine if the order of the Board of Education is reasonably supported by substantial evidence and not whether it is supported by a preponderance of the evidence. City of San Antonio v. Texas Water Commission, 407 S.W.2d 752, 756 (Tex.1966). It is not our function to determine whether or not we would have reached the same fact conclusion as that reached by the State Board. We are to determine if the action of the Board of Education is reasonably supported by substantial evidence. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 82 (1939). See also, Reavley, "Substantial Evidence and Insubstantial Review in Texas," 23 Sw.L.J. 239 (1969).

■ Having so reviewed the evidence introduced below, we are of the opinion that there was substantial evidence introduced upon the trial, to support the order of the State Board of Education. Further, we are of the opinion that the determination so made by the Board of Education

was neither arbitrary nor capricious. Thus, we have disposed of two of the grounds upon which the School District was authorized to appeal—subdivisions (1) and (2) of section (c), § 13.115, Education Code, supra.

■ When the District filed its appeal from the order of the Board of Education setting aside its dismissal of Briggs, the latter was faced with the provisions of Rule 97(a), relating to compulsory counterclaims. Neither the Commissioner of Education nor the Board of Education had made a determination of the availability of funds or of the amount of money, if any, Briggs was entitled to because of the District's breach of his contract.[2] At the time District filed its suit, Briggs was an "opposing party" and all other requirements for application of Rule 97(a) were clearly present. It was incumbent upon him, therefore, to file his cross action if he were ever to recover the money due under the contract with District. Cf. Akers v. Simpson, 445 S.W.2d 957, 959 (Tex.1969).

■ Briggs' cross action, however, was not one governed by the substantial evidence rule; it was a common law action for damages flowing from the breach of contract and it was his burden to establish, by a preponderance of the evidence, the facts necessary to support his recovery. Trial was to the Court on the entire case and we have no request for a trial by jury on any facet of the case. At the conclusion of the trial, the Court filed findings of fact and conclusions of law.

In Coleman v. Railroad Commission, 445 S.W.2d 790, 796 (Tex.Civ.App., Texarkana, 1969), a hybrid type of trial procedure was authorized, the Court saying:

"In testing the Railroad Commission's action in this appeal the trial court should have determined controverted ju-

---

2. The Commissioner included in his decision these words: "There is an obligation, of course, for appellant [Briggs] to make reasonable efforts to obtain, if not reinstated, another position in order to mitigate what the district must pay." The minutes of the Board of Education reflect that its order was that "[t]he decision of the Commissioner of Education . . . be sustained" and no additional findings or conclusions were assigned.

risdictional fact issues by jury trial and controverted administrative fact issues in the manner appropriate to them. There is no perceptible impediment to such procedure."

The Supreme Court granted the application of the Railroad Commission to review this decision upon a single point: "The Court of Civil Appeals, erred in holding that controverted jurisdictional fact issues must be tried before a jury and controverted administrative fact issues must be tried in a manner appropriate to them." 13 Tex.Sup.Ct.Jrl. 338 (1970). However, when the Court finally came to dispose of *Coleman,* it did so upon one of Coleman's points contained in an application which it had denied. The Court only noted in passing the point upon which it had granted the writ saying that it could "find no sound basis for considering and deciding the type of trial required on the issue of notice." Railroad Commission of Texas v. Coleman, 460 S.W.2d 404, 406 (Tex.1970).

We have not been referred to a case, other than *Coleman,* supra, where this type of dual procedure has been used. We recognize that in Southern Canal Co. v. State Board of Water Eng., 159 Tex. 227, 318 S.W.2d 619, 623 (1958), the Court held that the two procedures "are diametrically opposed to each other." In this case, the trial judge, sitting without a jury, applied the substantial evidence rule of procedure to District's appeal from the Board of Education and this was proper. When he came to consider Briggs' cross action upon his contract, he tried the case under the preponderance of the evidence rule and filed findings of fact and conclusions of law. There being no complaint as to the type of procedure used in the trial of this case, we will consider District's attack upon Briggs' monetary recovery under the

usual rules governing a case tried before the court.

The School District has grouped its first six points of error under one argument, the thrust of which is that the trial court erred as a matter of law in holding that Briggs did discharge his burden of showing that District had "current unencumbered funds" available to pay the salary due him under the contract at each of the following times: (a) upon the date of the execution of the contract; (b) at the time he filed his cross action to recover his salary; and (c) at the time the court entered judgment awarding him the salary found due and ordering the writ of mandamus to enforce its payment.

District's points now under review are bottomed upon the rule of law set forth in Aldine Independent School District v. Standley, 154 Tex. 547, 280 S.W.2d 578, 586 (1955):

"It has been held for many years that the trustees of a school district cannot make a contract for the employment of teachers to an amount greater than the school funds belonging to the district for that year; and that any debt contracted greater than that would be a violation of law; and constitutes no claim against the district."

■ This valid rule against deficit financing is well recognized; and, as said by Justice Griffin in *Standley,* supra, even "valid claims against a school district cannot be paid by the district unless funds for the current year of the claim are available to pay said claim *at the time of demand or judgment* upon such claim."[3]

District also calls to our attention Reid v. McKinney Independent School District, 322 S.W.2d 647, 650 (Tex.Civ.App., Fort

---

3. The holding in *Standley* was qualified in National Surety Corp. v. Friendswood Ind. School Dist., 433 S.W.2d 690 (Tex. 1968). Standley proved that there were funds available at the time his contract of employment was made but not at the time of the judgment. The Court said:

"[T]his latter fact was therefore the basis for the affirmance of the trial court judgment denying recovery on the contract." (Id. at p. 694)

All emphasis has been supplied unless otherwise indicated.

Worth, 1959, error ref. n.r.e.), wherein the court noted that in at least two reported cases it had been held "that the petitions were fatally defective in failing to allege that funds were available to pay the claims sued upon." Reliance is also had upon Russell v. Edgewood Independent School District, 406 S.W.2d 249, 252 (Tex.Civ. App., San Antonio, 1966, error ref. n.r.e.), and the cases therein cited.

Recognizing and giving full recognition to the rule against deficit spending by school districts—because we are in full accord with both the rule and the reason therefor—we overrule the points under consideration.

Briggs had detailed and specific allegations that the District had on hand "sufficient" funds to pay all money due him under his contract at each of the specific dates challenged by the District. Upon the trial, Briggs offered evidence, accepted by the trial court, that on each of the critical dates there were funds available in excess of the gross amount of his contract, $55,398, out of which he could have been paid.

The District, while not disputing the figures supplied by Briggs, claims that such funds were already "earmarked" for other purposes and were not available for payment of Briggs' claim. This contention is illustrated by the quotation from District's brief which is set out in the margin.[4] The District also offered evidence which, if accepted by the trier of the facts, would have warranted a contrary finding, i.e., that the District did not have, upon the several critical dates, "unencumbered" funds available to pay the gross amount of Briggs' contractual salary.

4. "Appellee attempted to show a cash balance in February, 1970, of $120,864.-90 (S.F. 291, Defendant's Exhibit 11). However, this 'maintenance fund' was shown to be money that had been already earned by teachers; money that had already been earned, set aside in order to pay their summer checks and money that had been encumbered, budgeted and 'earmarked.' (S.F. 61)"

Upon this evidence, the trial judge made and filed findings of fact specifically finding that upon each of the critical dates the District "had current unencumbered funds available" to meet Briggs' claim.

Having reviewed the evidence in accordance with the usual rules governing review of nonjury trials, we find that there is evidence of probative character to support the trial court's findings of fact. Such findings are controlling upon this court and will not be disturbed, even though this court might have reached a different conclusion therefrom. Commercial Union Assurance Company v. Foster, 379 S.W.2d 320, 322 (Tex.1964).

Justice Steakley in the *Friendswood ISD Case*, [footnote 3, supra], reaffirming the rule against deficit spending, held under the facts of that case:

"It is undisputed that the construction contract was within the powers of the trustees of the District, and that at the time of the contract the District had available sufficient unencumbered funds with which to pay the obligations assumed thereby. A deficiency debt was not created by the contract in the first instance, nor by the judgment of the trial court based thereon." (433 S.W.2d at 694)

Further, Briggs tendered evidence which was accepted by the trial court as being of probative character, that unencumbered funds were available, and he thereby established the necessary elements of his right to recover damages for the breach of his contract. See *Friendswood*, supra, wherein there was some relaxation of the rigid rules expressed in the older cases relied

Briggs points to the fact that District was paying to his successor more in salary than was due under Briggs' contract, and was depleting the funds which could be used to pay him. He also testified that with the money available to the Board, it could spend it for other purposes than those for which it had been informally "earmarked."

upon by the District. The first six points of error brought forward are overruled.

In its next series of points, District assails the finding of the trial court (and the Commissioner) that Briggs could not be assigned to any other position than superintendent. In support of this position it argues that the contract provided that the District "reserves the right to reassign [Briggs] at any time during the life of this contract." It also points to the fact that Briggs was a trained teacher in agriculture and refused the reassignment which was ordered. However, District fails to advise us that this contractual provision for reassignment is contained in the usual teacher's form of contract and provided that the reassignment must be "through the Superintendent of Schools and the proper Principal." At the time of the first of the two attempted reassignments, Briggs was the superintendent. The third attempt was during the interval while Briggs' case was upon appeal to the Commissioner of Education. Briggs also points to the fact that although the Board specifically charged him with thirty-nine grievances, it never at any time—in the hearing before the local Board or that before the Commissioner—assigned as a reason for his discharge his refusal to accept reassignment.

Additionally, Briggs contends that this being a matter for original determination by the Commissioner of Education, we must review the record under the substantial evidence procedure; and, he contends that such a review discloses no basis for setting aside this facet of the order. We disagree as to this latter contention.

■■ Whether or not District was entitled to reassign Briggs under the terms of the contract was one of law urged by District in defense of Briggs' claim for money. The Commissioner of Education does not exercise judicial power to determine the legality of contracts or the legal rights of parties thereto. Such are matters for the courts to determine under our system of a division of powers of government.

Texas Constitution, Art. 2, § 1, Vernon's Ann.St.; Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699, 711 (1959); Scott v. Texas State Board of Medical Examiners, 384 S.W.2d 686, 691 (Tex.1964).

■ When Briggs filed his cross action, he sought recovery on the contract and was met with the defensive plea of District that he was not entitled to damages because of his own breach in refusing to accept reassignment. Again, we will treat this aspect of the case under the usual rules of appellate procedure, and not under the substantial evidence rule.

District says that there are no Texas decisions on the question of the right of school authorities to reassign school personnel and in our research we have found none. It does refer us to several out-of-state cases which uphold such right under the laws of the particular jurisdiction. Assuming, without deciding, that in the ordinary case, the school authorities have the right of reassignment of personnel, we must examine this defensive issue in the light of the record made in the court below and the applicable contract law of Texas.

Briggs was hired as superintendent of the public schools; and under the statute, it is clear that there is a vast difference in the position of superintendent of a district answerable only to the Board of Trustees and that of a teacher in the schools. §§ 16.07, 16.08, Education Code.

■ Probably the leading case in Texas on the subject is that of Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W. 2d 579, 583 (1938), where the Court said:

"An employer has not the right to make a material change in the position to which his employee is entitled under the contract of employment, and the employee is justified in refusing to submit to such a change. *Such refusal does not amount to a breach of a contract on his part.* Kramer v. Wolf Cigar Stores Co., 99 Tex. 597, 91 S.W. 775. In fact, as stated by this court in the case last cited,

**836**

his consent to the proposal might operate to change the original contract and deprive him of any right to claim that it has been broken by the employer."

We are not surprised to find testimony in the record from Briggs which brings his claim squarely within the provisions of the quotation above. Upon the basis of this testimony, the trial court made its findings and conclusions of law permitting the recovery. Consequently, we are of the opinion that no error is presented by this series of points.

While the District has other points in its brief, our review thereof does not indicate that any error is presented thereby and each of said points is overruled and the judgment of the trial court is in all things

Affirmed.