## NUECES COUNTY et al. v. NUECES COUNTY DRAINAGE DIST. et al. (No. 7052.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 2, 1924. Rehearing Denied Feb. 6, 1924.)

1. **Counties** &#9092;222—Presentation of claim to county and neglect to pay held pleaded.

In drainage district's action against county for district's funds, allegations that "on or about" a specified date "when due demand was made upon defendant H——, treasurer aforesaid (treasurer of county), and thereupon he refused to pay over the same or any part thereof, and likewise the commissioners' court aforesaid," and that the treasurer was holding the funds at the command of the commissioners' court, *held* sufficient, as against a general demurrer, to plead presentation of claim to commissioners' court, and neglect to pay, under Rev. St. art. 1366.

2. **Counties** &#9092;146—County held not liable for misappropriation by county treasurer of district's funds in his custody as treasurer of district.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2607, making it the duty of the county treasurer to open an account with drainage district organized under title 47, c. 4, and article 2608, making the county treasurer the treasurer of such district, and requiring him to execute a bond payable to drainage commissioners, a county was not liable to drainage district for district's funds misappropriated by its treasurer, the county not participating in such misappropriation, since in handling such funds the treasurer was acting in his capacity as the treasurer of the drainage district, and not in his capacity as county treasurer.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by the Nueces County Drainage District and others against Nueces County and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

James M. Taylor, Delmas Givens, and Geo. C. Westervelt, all of Corpus Christi, and Pope, Pope & Pope, of Laredo, for appellants.

R. B. Russell, of San Antonio, for appellees.

FLY, C. J. This action was instituted by Nueces county drainage district and its commissioners, and the First State Bank of

Robstown, its depository, against Nueces county and its county judge and commissioners, and its treasurer, H. N. Garrett, to recover the sum of $11,473.53 alleged to have been paid to the tax collector, H. D. C. Gussett, then treasurer, and by him mixed with the funds of the county without being distinguished therefrom, that Gussett relinquished his office on February 6, 1917, and delivered to H. N. Garrett, his successor in office, a lump sum of $52,581.16, without distinction as to any fund. The cause was submitted to a jury on special issues, and on the answers thereto judgment was rendered in favor of appellees for $11,466.48.

The jury found that there was in the treasury of Nueces county $11,466.48 on February 6, 1917, belonging to the drainage district, which has never been paid to the drainage district, and that sum is now due the district by the county, and was received by the county.

[1] The first assignment presents as error the overruling of the general demurrer to the petition. The ground for the general demurrer was that there was no allegation that the claim for the money due the district was presented to the commissioners' court for approval or allowance, or the county auditor for auditing, and that there had been a refusal to allow or audit. The evidence showed that the drainage district did demand payment of its funds of the commissioners' court, which was refused. Appellants contend that as a condition precedent to a suit the claim should be presented to the commissioners' court for allowance, and that such court shall have neglected or refused to audit or allow the claim. Revised Statutes, art. 1366. It is alleged in the petition that "on or about the 1st day of August, A. D. 1917, when due demand was made upon the defendant H. N. Garrett, treasurer aforesaid, and thereupon he refused to pay over the same or any part thereof, and likewise the commissioners' court aforesaid." It was also alleged that the treasurer was holding the drainage district fund at the command of the commissioners' court. The allegations were sufficient as against a general demurrer. The facts alleged, not only show that the commissioners' court neglected to audit and allow the claim, but commanded the treasurer not to pay it. As said in Williams v. Bowie County, 58 Tex. Civ. App. 116, 123 S. W. 199:

"Article 790 [now 1366] of the Revised Statutes of 1895, while requiring claims against the county to be first presented to the commissioners' court * * * as a condition precedent to the institution of suits against the county, does not make it also a condition precedent to the filing of suits that such claims should have been positively rejected and payment refused. It is sufficient if the court 'neglect' to allow the claim. We think 'neglect,' as that term is here used is sufficiently shown when it appears from the evidence that the

258 S.W.—14

court has been given a reasonable time within which to act, and has failed to allow the claim. The purpose of the statute is to furnish the representatives of the county an opportunity to pay demands against it without being harrassed by suits for their collection."

The allegations sufficiently indicate the presentation of the claim to the commissioners' court and neglect to pay it. The money was paid to the treasurer of the county, and was diverted from the use for which it was intended to the use of the county. Every demand of article 1366 has been met by the allegations. Smith v. Wise County (Tex. Civ. App.) 187 S. W. 705; Cobb v. Dies (Tex. Civ. App.) 203 S. W. 437. The first assignment of error is overruled.

The second, third, and fourth assignments of error present complaints because of the refusal of the court to sustain certain special exceptions, and they are overruled. Under the law of Texas the county commissioners' courts are given the power and authority to establish one or more drainage districts in their respective counties, and the statute prescribes the method to be used in such establishment, provides for surveys by a civil engineer appointed by the commissioners, and his report and action thereon by the court. Then follows an election in the district ordered by the commissioners' court, the appointment by them of district commissioners, and the issuance of drainage bonds on their order, and the levy of taxes to pay them. The county tax collector collects the taxes. Title 47, c. 4, Vernon's Sayles' Civ. Stats.

[2] It is provided in article 2607 of the statutes that—

"It shall be the duty of the county treasurer to open an account with the drainage district, and to keep an accurate account of all moneys received by him belonging to such district and of all amounts paid out by him. He shall pay out no money except upon a voucher signed by the drainage commissioners and countersigned by the county judge, and he shall carefully preserve on file all orders for the payment of money, and as often as required by the said drainage commissioners or the county commissioners court he shall render a correct account to them of all matters pertaining to the financial condition of such district."

Looking to this article alone it might be inferred that in attending to the financial affairs of the district the officer was acting as county treasurer, and not as an officer of the district, but a different aspect is presented by the terms of the succeeding article of the statutes. In that article, being 2608, it is provided:

"The county treasurer shall be the treasurer of such district, and shall execute a good and sufficient bond, payable to the drainage commissioners of such district, in a sum equal to the amount of bonds issued, conditioned for the faithful performance of his duty as treasur-

er of such district, which bond shall be approved by said drainage commissioners."

Provision is made for paying the treasurer for his services out of funds of the district. It is clear that as to the funds belonging to a drainage district the commissioners of the district have the absolute control, and they may make the county treasurer the district treasurer, and require a bond from him, or they may place their funds in a depository chosen by them, and which depository can be required by them to give a good and sufficient bond, and the treasurer to give a similar bond to that required of him when the county has a depositary. It is the evident intention of the statute to relieve the county of all responsibility for funds placed in the hands of its treasurer by a drainage district, and provide means to the district for having full control of its funds, and to protect itself against any loss that may arise from any misapplication of its funds by its treasurer. If the statute had permitted the drainage district to select any person other than the county treasurer for its treasurer, it would never have been thought for a moment that the county was responsible for him, and yet the treasurer of the county is just as separate from the treasurer of the district as though he were a different person. The bond to be required of the treasurer of the district was a district affair, over which the county had no control, and for an infraction of which the county could not be held liable. The bond required by law to be given by the county treasurer does not cover drainage funds, and on that bond the treasurer would not be liable to any one for the district funds. The law does not contemplate that the county shall be liable for a misapplication of the district's funds, and makes adequate and full provision for the protection of the district through bonds it is authorized to demand. The law in terms requires the treasurer not to mix district funds with county funds, but to open an account with the drainage district, and to keep an accurate account of all moneys belonging to such district. Mere knowledge by the county that its treasurer had collected moneys belonging to the drainage district could not render it liable for a misappropriation of such moneys unless it was shown that the county actively participated in such misappropriation. No duty rested on the county to obtain bonds or to use any care or circumspection in regard to the drainage district funds. It exercised no control over their safe-keeping or disposition, and without such duty resting upon the county it could not be held liable, unless it knowingly converted the property of the district to its own use. No such case is presented by the record. There is no testimony tending to show that the county ever received the use or benefit of a single dollar of the drainage district funds, or even that a dollar of it was ever mingled with the county funds. It is true that Garrett states that $11,466.48 of drainage district fund was turned over to him, but he afterwards testified that no drainage district money was ever turned over to him. In some way several sums had been placed by the auditor to the credit of the drainage district, but by order of the commissioners' court they were transferred to the general fund; the order reciting, "this court denying that said drainage district has any interest in said sum of money." There is no evidence that the district had any right or interest in the sums so transferred, and on the other hand the evidence showed that Garrett accounted for all sums collected by him for the drainage district, which were credited to them and were used by the district. If any misappropriation of the fund was made, it was during the incumbency of treasurer Gussett, as was alleged by the drainage district. No fund of the drainage district collected by Gussett was traced into the hands of Garrett and then into the hands of the county.

It must be kept in mind that the possession of the drainage fund by the county treasurer was not the possession of the county, because such possession was by virtue of his office as district treasurer, and not by reason of the office of county treasurer. The county was not accountable for its safe-keeping, and could not be held liable for it, except as any other person might be held accountable, and that only through a conversion of it to other purposes than those for which it was intended. Garrett lacked of receiving from Gussett over $25,000 of the money belonging to the county, and there was no evidence of any drainage district money being among that turned over to Garrett. The testimony as to the county having ever received the drainage district money was too unsatisfactory to form a basis for the findings of the jury.

If, as might be inferred, the $14,895.17 drainage fund held by Garrett was money collected by him from the tax collector for money paid in for 1917, the evidence should not have been admitted. All uncertainty on this score should be removed on another trial. It becomes unnecessary to consider other matters raised by the assignments of error, and they are overruled.

The judgment will be reversed, and the cause remanded.