

# The Attorney General of Texas

May 2, 1984

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Bob Bullock
Comptroller of Public Accounts
L.B.J. Building
Austin, Texas   78774

Opinion No.  JM-153

Re:  Whether a county govern-
ment is liable for court costs
collected  on  behalf  of  the
state, and related questions

Dear Mr. Bullock:

You ask several questions relating to court costs collected on
behalf of the state under the statutes that create the Criminal
Justice Planning Fund, the Law Enforcement Officer Standards and
Education Fund, and the Compensation of Victims of Crime Fund.

Each of the statutes that creates the enumerated funds directs
the court, in addition to other taxable court costs, to tax the
defendant specified costs of court on conviction of traffic or
criminal violations, which costs are collected in the same manner as
other fines or costs.  Also, the statutes direct the officer who
collects the costs that are applicable to each court to keep separate
records of those funds and to deposit them in the county or municipal
treasury, as the case may be.  The custodians of those treasuries
shall keep records of the funds collected under each statute and
quarterly remit to the comptroller of public accounts the funds so
collected, less ten percent which the custodians retain as a service
fee for the collection.  The statutes creating the Criminal Justice
Planning Fund and the Law Enforcement Officer Standards and Education
Fund expressly direct officers collecting court costs under those
statutes to file the reports required by articles 1001 and 1002, of
the Code of Criminal Procedure.  The funds collected under all three
statutes are expressly subject to audit by the comptroller.  See Code
Crim. Proc. art. 1083; V.T.C.S. art. 4413(29aa), §9B; V.T.C.S. art.
8309-1, §14.

You advise us that such audits by your office have disclosed
instances where justices of the peace failed to deposit in the county
treasury the court costs they collected on behalf of the state under
those statutes.  Your first question is whether a county government is
liable to the state for court costs actually collected within the
scope of official duties by a county officer charged by law with the
collection of state money under article 1004 of the Code of Criminal

Procedure if the funds are not deposited by the officer in the county treasury. We believe that a county government under these circumstances is not liable to the state for the court costs that were not deposited in the county treasury.

Article IX, section 1, of the Texas Constitution gives the legislature "power to create counties for the convenience of the people" with stated guidelines. Article XI, section 1 of the constitution declares that the several counties of this state are recognized as legal subdivisions of the state. The Texas Supreme Court has described the relation which the counties of the state bear to the sovereignty of the state as mere political subdivisions of the state created for the convenience of the people, for the purpose of local government, and for the exercise of essentially state powers and has stated that counties exist as agencies of the state for the effective discharge through local officers of the governmental obligations of the state. State government cannot be all conducted by purely state officials located at the capitol. The powers of the counties are duties imposed on them by the state. See Bexar County v. Linden, 220 S.W. 761 (Tex. 1920); Orndorff v. State, 108 S.W.2d 206, 209 (Tex. Civ. App. - El Paso 1937, writ ref'd).

The statutes creating the funds in question direct a justice of the peace, as an officer charged by law with collection of money in the name or for the use of the state, to make the reports required under articles 1001 and 1002 of the Code of Criminal Procedure, and to keep separate records and deposit the funds in the county treasury. Articles 1001, 1002, and 1004 of the Code of Criminal Procedure provide the following:

Article 1001.

All officers charged by law with collecting money in the name or for the use of the State shall report in writing under oath to the respective district courts of their several counties, on the first day of each term, the amounts of money that have come to their hands since the last term of their respective courts aforesaid.

Art. 1002.

Such report shall state:

1. The amount collected.

2. When and from whom collected.

3. By virtue of what process collected.

4. The disposition that has been made of the money.

5. If no money has been collected, the report shall so state.

. . . .

Art. 1004.

The officers charged by law with the collection of money, within the meaning of the three preceding articles, and who are required to make the reports therein mentioned, are: District and county attorneys, clerks of the district and county courts, sheriffs, constables, and justices of the peace.

Articles 1001 and 1002 expressly apply to a justice of the peace, and justices of the peace have been held to be county officers within the meaning of other statutes, such as a former penal code provision relating to the misapplication of public funds by county officers. See Crump v. State, 5 S.W. 182, 183 (Tex. App. 1887).

However, it is a well settled rule of the common law of this state that a county is not liable for the tortious acts of its officers in the performance of official acts unless such liability is created by statute either by express words or by necessary implication. See Harris County v. Gerhart, 283 S.W. 139, 140 (Tex. 1926); Wade v. Jackson County, 547 S.W.2d 371, 373 (Tex. Civ. App. - Corpus Christi 1977, writ ref'd n.r.e.). We know of no statute which expressly makes a county liable for the misapplication of funds by its officers. We do not believe that it was the intent of the legislature that the statutes discussed here, which impose duties on county officers to tax, collect, report, deposit locally, and remit to the comptroller the specified court costs on behalf of the state, would impliedly render the counties liable for the neglect or wrongs of the counties' officers in performing those duties. Article 6252-19b, V.T.C.S., which is discussed later in this opinion, relates not to the liability of county government itself but to payment of damages, costs, and attorneys fees that are adjudged against a county officer.

While we do not believe that a county is liable for negligence or conversion by its officers, we also do not believe that a county is immune from liability in a cause of action based on the conversion of funds which the county government actually receives and appropriates to its own benefit and which the state owns in whole or in part. See

Dial v. Crosby County, 96 S.W.2d 534, 536 (Tex. Civ. App. - Amarillo 1936, no writ); Comanche County v. Burks, 166 S.W. 470, 472 (Tex. Civ. App. - Fort Worth 1914, writ ref'd); Boaz v. Ferrell, 152 S.W. 200, 202 (Tex. Civ. App. - Fort Worth 1912, no writ). In our opinion, the fact that a justice of the peace converts to his own use funds that he holds in trust for the state does not constitute conversion of such funds by a county that does not participate in such misappropriation. See Nueces County v. Nueces County Drainage District, 258 S.W. 208, 210 (Tex. Civ. App. - San Antonio 1924, no writ).

In Attorney General Opinion M-1076 (1972), relating to the responsibility of a county for court costs taxed pursuant to article 1083 for the Criminal Justice Planning Fund, this office expressed the opinion that the stated purpose of the statute indicates a legislative intent that those costs be paid by convicted defendants and not by the counties. The question arose because court costs taxed for the Criminal Justice Planning Fund were satisfied by service in jail. Funds to pay the costs were not collected or deposited in the county treasury. Under the statutes in question, the counties serve as instrumentalities of the state to aid the state government in the collection and transmittal of state funds. We find no indication in the statutes that the legislature intended a county, or the taxpayers of the state within a county, to be responsible out of county funds for the court costs in question when the county does not receive the costs from the collecting officer or participate in their misappropriation. We agree with the conclusion in Attorney General Opinion M-1076 that, without such a statute, a county is not liable to the state for such costs.

Your second question is whether, if the comptroller establishes by audit that funds are due the state, he may initiate collection action against the individuals misappropriating the funds. We believe the comptroller has a duty to take the same action to collect those funds that he employs to collect the other debts and taxes owed the state.

The statutes directing the courts to tax to defendants the court costs in question refer to those court costs as "costs due the state" and provide for the collection and transmittal of those funds to the comptroller for deposit in special funds in the state treasury. See Code Crim. Proc. art. 1083, §5. The officers collecting the court costs are subject to the provisions of articles 1001 and 1002 of the Code of Criminal Procedure, which expressly apply to "officers charged by law with collecting money in the name and for the use of the state." We believe such costs are held in trust for the state by the local officers collecting them and by the local treasuries in which they are deposited prior to transmittal to the comptroller. We conclude that articles 4344 and 4396, V.T.C.S., authorize the comptroller to certify accounts of misappropriated court costs

belonging to the state to the attorney general for prosecution and suit.

Article 4344 provides, in pertinent part:

Among other duties the Comptroller shall:

. . . .

8. Require all persons who have received and not accounted for any money belonging to the State to settle their accounts.

. . . .

10. Examine and settle the accounts of all persons indebted to the State and certify the amount or balance to the Treasurer, and direct and superintend the collection of all moneys due the State.

Article 4396 instructs the attorney general to

transmit to the proper district or county attorney, with such instructions as he may deem necessary, any certified account, bond or other demand which the Comptroller has delivered to him for prosecution and suit.   (Emphasis added).

Your third question asks whether a county, if it initiates action on its own against a former justice of the peace and recovers money representing the misapplied court costs due the state, must remit to the comptroller the entire amount recovered or is entitled to offset its own expenses incurred in filing suit. We believe that the county may retain fees authorized by statute for the collection of state funds by a county or district attorney.

Articles 339 and 4400, V.T.C.S., provide, in pertinent part, the following:

Art. 339

When it shall come to the knowledge of any district or county attorney that any officer in his district or county entrusted with the collection or safe keeping of any public funds is in any manner whatsoever neglecting or abusing the trust confided in him, or in any way failing to discharge his duties under the law, he shall

> institute such proceedings as are necessary to compel the performance of such duties by such officer and to preserve and protect the public interests.
>
> Art. 4400
>
> [The attorney general] shall at least once a month inspect the accounts of the offices of the State Treasurer and the Comptroller, of all officers and persons charged with the collection or custody of funds of the State. He shall proceed immediately to institute, or cause to be instituted, against any such officer or person who is in default or arrears, suit for the recovery of funds in his hands . . . .

Those statutes, when considered in pari materia, authorize either the attorney general or a county or district attorney to represent the state and prosecute an action in the name of the state for the collection of state funds misappropriated by county officers. See State v. Bratton, 192 S.W. 814 (Tex. Civ. App. 1917, writ ref'd).

All of the money taxed and collected as court costs under the statutes creating the Criminal Justice Planning Fund, the Law Enforcement Officer Standards and Education Fund, and the Victims of Crime Fund belongs to the state except as otherwise provided by statute. Each of the statutes creating those funds authorizes a city or county to retain ten percent of the funds collected and deposited in its treasury as a service fee for the collection. See Code Crim. Proc. art. 1803, §7; V.T.C.S. arts. 4413(29aa), §9B(f); 8309-1, §14(e). Also, article 335, V.T.C.S., provides, in pertinent part that

> [w]henever a district or county attorney has collected money for the State . . . he shall within thirty days after receiving the same, pay it into the treasury of the State . . . after deducting therefrom and retaining the commissions allowed him thereon by law. Such district or county attorney shall be entitled to ten percent commissions on the first thousand dollars collected by him in any one case for the State . . . from any individual or company, and five percent on all sums over one thousand dollars, to be retained out of the money when collected . . . .

Statutes which deal with the same general subject matter and have the same general purpose are considered in pari materia and must be

harmonized, if possible, and construed so as not to destroy the effect of either. Lingner v. Haley, 277 S.W.2d 302, 306 (Tex. Civ. App. - Amarillo 1954, writ dism'd).

Accordingly, we believe that the statutes creating the funds authorize a county to retain a service fee from funds collected and deposited in its treasury without proceedings by a county or district attorney to collect the court costs due the state under those statutes. If a county or district attorney initiates action on his own against a former justice of the peace and recovers funds representing misapplied court costs due the state, article 335 authorizes the county or district attorney to retain the specified commissions from the state's funds when collected.

Article XVI, section 61, of the Texas Constitution, provides that all fees earned by a county officer shall be paid into the county treasury for account to the proper fund except that, if an officer is compensated wholly on a fee basis, the fees may be retained by the officer or paid into the county treasury as the commissioners court directs. All of the fees and commissions earned and collected by the officials named in article 3912k, V.T.C.S., shall be paid into the county treasury in accordance with the provisions of section 61, article XVI, of the Texas Constitution. V.T.C.S. art. 3912k, §5. See also V.T.C.S. art. 3912e, §5; Attorney General Opinions MW-584 (1982); C-751 (1966).

Your fourth question inquires whether a county judge, justice of the peace, or the clerk of a district or county court is authorized to waive payment of court costs required to be taxed under the three statutes in question. We believe that the court costs must be taxed by the court and collected as other fines and costs are collected. See Code Crim. Proc. art. 1083, §5; V.T.C.S. arts. 4413(29aa), §9B(c); 8309-1, §14(c).

The language of each of those statutes provides that the court costs shall be taxed, shall be deposited in the city or county treasury, as the case may be, and shall be remitted quarterly to the comptroller, who shall deposit them in the respective special funds in the state treasury. We believe those provisions are mandatory. The term "shall" generally connotes a mandatory duty, but whether statutes are permissive or mandatory is determined by the intent of the legislature. See Jaynes v. Lee, 306 S.W.2d 182, 185 (Tex. Civ. App. - Texarkana 1957, no writ); Moyer v. Kelley, 93 S.W.2d 502, 503 (Tex. Civ. App. - San Antonio 1936, writ dism'd); Attorney General Opinion MW-380 (1981). We find no evidence that the legislature intended the language in question to be permissive authority to the named officers to tax or collect the court costs, or to be authority to waive their taxation or collection, except to the extent that the express language

of the statutes provides for collection in the same manner as other fines or costs are collected in the case.

The legislature has provided alternative means for collection of fines and costs from defendants.  The court may order a defendant to pay the entire fine and costs at the time of the pronouncement of sentence, order a defendant to pay the entire fine and costs at a later date, or order a defendant to pay specified portions of the fine and costs at designated intervals.  A convicted defendant may discharge all or part of the court costs by service in jail.  See Code Crim. Proc. arts. 42.15; 43.03; 45.50; 45.52; Ex parte Tate, 471 S.W.2d 404, 406 (Tex. Crim. App. 1971); Attorney General Opinion M-1076 (1972).  Article I, section 28, of the Texas Constitution recites that "[n]o power of suspending laws in this State shall be exercised except by the Legislature."

Your fourth question also inquires whether a county is liable to the state for costs which were not taxed or not collected.  Our discussion of your first question expressed the opinion that the legislature intended convicted defendants, not the counties, to pay for those court costs and that county governments are not liable to the state for court costs that the county does not receive due to the neglect or misconduct of county officers in performing the duties imposed by the statutes in question.

Your last question inquires whether the failure of a county official to tax or collect court costs as required by the statutes in question constitutes negligence within the meaning of section 2(a) of article 6252-19b, V.T.C.S.  Article 6252-19b applies only to damages that "arise out of a cause of action for negligence, except a wilful or wrongful act or omission or an act or omission constituting gross negligence or for official misconduct."  Whether the failure of a county official to tax or collect court costs would create a cause of action for negligence, and one that is not excepted by the statute because the act or omission is wilful or wrongful or constitutes gross negligence or official misconduct, involves fact questions which cannot be answered in the abstract or in the opinion process.  However, if the question also is an inquiry as to whether article 6252-19b applies to a suit based on the failure of a county official to tax or collect court costs for the state, we believe the statute is not applicable to damages, court costs, and attorney fees awarded to the state against a county official.

Article 6252-19b, section 2(a) provides

> [a] county, city, town, special purpose district,
> or any other political subdivision of the state
> may   pay   actual   damages,   court   costs,   and
> attorney's fees adjudged against its employee, if

damages are based on an act or omission by the
employee in the course and scope of his or her
employment for such political subdivision and if
the damages arise out of a cause of action for
negligence, except a wilful or wrongful act or
omission or an act or omission constituting gross
negligence or for official misconduct.

A present or former county official is included in the definition of
"employee" in section 1 of that statute.

Article 6252-26, V.T.C.S., makes the state liable for payment of
actual damages, court costs, and attorney fees adjudged against
officers and employees of the state in certain cases.   Article
6252-19b is a similar statute which was enacted subsequent to article
6252-26 to extend to the political subdivisions of the state authority
to pay actual damages, court costs, and attorneys fees adjudged
against their officers and employees.  See Bill Analysis to House Bill
No. 1134, 66th Legislature, prepared for House Intergovernmental
Affairs Committee, filed in Bill File to House Bill No. 1135,
Legislative Reference Library.  The purpose of article 6252-26 is
protection of state officials and employees from citizen suits for
acts or omissions while they are acting for the state.  Prior to that
statute, certain officers and employees could not afford to subject
themselves to the liability of civil law suits and could adequately
protect themselves only by terminating their relationship with the
state.  See Bill Analyses to Senate Bill No. 704, 64th Legislature,
and Senate Bill No. 37, 65th Legislature, prepared for House Judicial
Affairs Committee; transcript of proceedings of the Senate State
Affairs Committee on January 26, 1977.

Section 2(b) of article 6252-19b expressly provides that
"[l]iability of the political subdivision under this Act is limited to
$100,000 to a single person and $300,000 for a single occurrence, in
the case of personal injury or death, and to $10,000 for a single
occurrence of injury of or damage to property."  We do not believe
that the phrase "to a single person" in that context includes the
State of Texas.  A "case of personal injury or death" and "injury of
or damage to property" also are not applicable to suits by the state
for failure of a county official to tax or collect court costs.

Section 2(b) also provides that a "county or political
subdivision is not liable under this Act to the extent that damages
are recoverable under a contract of insurance or under a plan of
self-insurance authorized by statute."  Article 2372h-7, V.T.C.S., was
amended by the same bill that enacted article 6252-19b.  The fact that
article 2372h-7 only authorizes a county to insure its officers
"against liability to a third person arising from the performance of
official duties . . . by purchasing policies of liability insurance"

further indicates that article 6252-19b is not intended to apply to liability to the state for an official's failure to tax or collect the state's court costs.

### S U M M A R Y

A county government is not liable to the state for court costs that are collected but not deposited in the county treasury by a county official under the statutes creating the Criminal Justice Planning Fund, the Law Enforcement Officer Standards and Education Fund, and the Compensation of Victims of Crime Fund. The comptroller of public accounts may initiate collection action against an individual misappropriating such funds to collect the funds that he determines by his audit are due the state. If a county initiates action against a former county official to recover misapplied court costs due the state, the county may retain fees authorized by statute for the collection of state funds by a county or district attorney. The county officials with the responsibility to tax or collect the court costs due the state do not have authority to waive their taxation or collection but shall collect such costs in the same manner as other fines and costs are collected. Article 6252-19b, authorizing a county to pay certain damages, costs, and attorney fees adjudged against a county official, is not applicable to a suit based on a failure of the county official to tax or collect court costs for the state.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Nancy Sutton
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Jon Bible
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton